[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-13938

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 10, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-01118-CV-ODE-1

FRANKIE WHITE,
LEON WARNER,
Individually and On Behalf of
All Others Similarly Situated,

Plaintiffs-Appellants,

versus

THE COCA-COLA COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(September 10, 2008)**

Before BIRCH, WILSON and PRYOR, Circuit Judges.

PRYOR, Circuit Judge:

In this appeal we consider whether a plan administrator's reduction of benefits under a long-term-disability plan based on a participant's receipt of Social Security disability benefits is reasonable and entitled to deference. Frankie White and Leon Warner appeal the summary judgment against their complaints for benefits under the Coca-Cola Company Long Term Disability Income Plan, which is governed by the Employee Retirement Income Security Act of 1974. 29 U.S.C. §§ 1001–1461. White and Warner contest the plan administrator's interpretation of both a provision that permits an offset for the receipt of other disability benefits and a provision that allows the plan to recoup overpayments of benefits. Because the interpretation of the offset provision by Coca-Cola is reasonable and entitled to deference and the interpretation of the recoupment provision by Coca-Cola is correct, we affirm the summary judgment in favor of Coca-Cola.

## I. BACKGROUND

We divide our discussion of the background of this appeal in three parts. First, we discuss the terms of the plan. Second, we discuss White's and Warner's claims for benefits. Third, we discuss the procedural history.

2

*A. The Plan*

As the sponsor and administrator of the plan, Coca-Cola delegated its powers to The Coca-Cola Company Benefits Committee. The plan grants the committee exclusive responsibility and discretionary authority "to construe the Plan and decide all questions arising under the Plan," including the authority "to determine the eligibility of Participants to receive benefits and the amount of benefits to which any Participant may be entitled under the Plan." Although the plan permits the committee to delegate some of its powers to an administrative services provider, the committee retains the final authority to determine the eligibility of participants, the entitlement of participants to benefits, and all issues arising under the plan.

For participants who were determined to be disabled under the plan before January 1, 2003, benefits are paid from a trust funded by periodic and irrevocable payments by Coca-Cola. Although Coca-Cola states that the claims of participants have never been paid from the general assets of Coca-Cola, two filings with the Internal Revenue Service, Form 5500 Annual Return/Report of Employee Benefit Plan for the years 2003 and 2004, state that claims were paid out of the trust and the general assets of Coca-Cola for those years. Coca-Cola filed an affidavit stating that these filings have scrivener's errors.

Under the plan, the default monthly benefit is ordinarily 60 percent of the participant's average compensation. The plan contains in section 4.2(a) an offset provision, which reduces the disability benefits for a participant who receives disability benefits from other sources:

> The monthly Disability Benefit payable from this Plan to the Participant who receives disability benefits from any source described in subsection (b) [including Social Security benefits] will be reduced as necessary so that the total of his monthly Disability Benefit from this Plan equals no more than the following amount:
>
> > (1) 70 percent of his Average Compensation . . . minus
> >
> > (2) the amount of his monthly disability benefits payable from all other sources;
>
> provided that the difference will not exceed 60 percent of his Average Compensation . . . ; and provided further that the offset for other disability benefits will not serve to reduce the Disability Benefit under this Plan to an amount less than 60 percent of the Participant's Average Compensation . . . .

The plan also states that benefits under the plan will cease if benefits from other sources "equal[] or exceed[] 70 percent of [the participant's] Average Compensation."

The summary plan description provides an example of the operation of the offset provision:

> LTD payment example

Suppose your basic monthly pay for disability purposes is $3,000 and you do not receive benefits from other sources.

Here's how your LTD payment is figured:

| | |
|---|---|
| $3,000 | Basic monthly pay before disability |
| x  60% | Maximum LTD pay replacement percentage |
| $1,800 | Maximum monthly benefit from the LTD plan |

If you begin receiving $750 in monthly Social Security disability payments, your LTD benefits will be reduced as follows:

| | |
|---|---|
| $3,000 | Basic monthly pay before disability |
| x  70% | Maximum pay replacement percentage from all sources |
| $2,100 | Total amount of your pay to be replaced from all sources |
| -[$]750 | Monthly Social Security disability payment |
| $1,350 | Actual monthly benefit from the LTD plan |

As the above example shows, the LTD Plan works with your Social Security disability payments to bring your monthly income to 70% of your basic monthly pay.

The summary plan description also restates that benefits cease if benefits from other sources equal or exceed 70 percent of the participant's average

compensation.

The plan also contains a provision for the recoupment of any overpayment of benefits. Section 4.2(d) of the plan states, "If the Participant receives a retroactive payment of a disability benefit described in Subsection (b), the benefit will be considered to have been paid throughout the period for which it was payable." Section 4.2(e), which is the recoupment provision, states, "Any overpayment of Disability Benefits arising under Subsection . . . (d) will be deducted from the Participant's future payments [from the plan]." The summary plan description restates these provisions.

### B. White's and Warner's Claims for Benefits

White became disabled in 1999 and received long-term disability benefits under the plan from August 1999 to July 2004. White received $1,720.15 a month, which was 60 percent of his average compensation. On July 31, 2004, the administrative services provider, Liberty Life Assurance Company of Boston, terminated White's disability benefits. White appealed, and the committee reinstated White's benefits in November 2005 retroactive to July 30, 2004.

In July 2005, the Social Security Administration awarded White disability benefits in the amount of $1,442.10 a month retroactive to November 2001. The Administration awarded White a lump-sum payment of $38,124.90 in retroactive

6

benefits. White informed Coca-Cola of his award of Social Security benefits in August 2005.

When Liberty Life resumed making payments to White, it applied both the offset provision and the recoupment provision. Liberty Life reduced White's payments to 70 percent of his average compensation less his monthly Social Security benefits for a total monthly payment of $564.85. Liberty Life calculated that White had been overpaid $32,824.90 and reduced his monthly benefits under the plan by $466.84 a month for approximately 60 months to recover the overpayments. Liberty Life did not inform White that he could file an administrative appeal to challenge the reduction of his benefits.

White appealed the application of the offset and recoupment provisions to the committee in February 2006. White argued that the last proviso clause of the offset provision creates a "60 percent floor" for his benefits and prohibits an offset to account for his receipt of Social Security benefits. White also argued that, even if the plan permits the offset of his future benefits to account for his Social Security benefits, the plan and ERISA prohibit the recovery of an overpayment of his past benefits. White attached a copy of a judicial opinion, Oliver v. Coca-Cola Co., 397 F. Supp. 2d 1327 (N.D. Ala. 2005), in support of his appeal.

The committee retained outside counsel, Patrick DiCarlo, to evaluate

White's claims and prepare a legal opinion regarding the offset and recoupment provisions. DiCarlo concluded that, because the proviso clause was inconsistent with other terms of the plan, the offset provision was ambiguous. DiCarlo concluded that the committee could interpret the plan to permit an offset below 60 percent of a participant's average compensation to account for benefits from other sources and recover an overpayment based on a retroactive award of Social Security benefits. DiCarlo also concluded that Coca-Cola was not bound by the decision of the district court in Oliver. The committee adopted DiCarlo's interpretation of the plan and unanimously voted to deny White's claims for additional benefits. DiCarlo sent a letter to White that explained the final decision of the committee.

Warner became disabled and, in March 2000, was approved for disability benefits of $1,931.62 a month, which was 60 percent of his average compensation. On October 15, 2002, the plan administrator, ING, informed Warner that, because he received Social Security disability benefits of $1,474 a month beginning in October 2000, ING would apply the offset and recoupment provisions to his benefits. ING determined that Warner was overpaid $26,471.70 in benefits and reduced his payments by $779.56 a month for approximately 23 months. ING never informed Warner of his ability to file an administrative appeal, and Warner

8

did not appeal the reduction of his benefits.

## C. Procedural History

White and Warner filed a complaint against Coca-Cola regarding the reduction of their benefits. The district court granted summary judgment in favor of Coca-Cola and denied the motion for partial summary judgment filed by White and Warner. The district court concluded that the interpretation of the offset provision by Coca-Cola is "de novo wrong," but reasonable and entitled to deference. The district court also concluded that the interpretation of the recoupment provision by Coca-Cola is "de novo right." The district court denied as unnecessary the motion to compel discovery and denied as moot their motion for class certification.

## II. STANDARDS OF REVIEW

We review a summary judgment de novo. Cagle v. Bruner, 112 F.3d 1510, 1514 (11th Cir. 1997). We review a denial of discovery for abuse of discretion. Jackson v. Cintas Corp., 425 F.3d 1313, 1316 (11th Cir. 2005). We review a denial of class certification for abuse of discretion. Hines v. Widnall, 334 F.3d 1253, 1255 (11th Cir. 2003).

## III. DISCUSSION

The district court used the framework that we established in Williams v.

BellSouth Telecommunications, Inc., 373 F.3d 1132, 1137–38 (11th Cir. 2004), which provides a six-step process "for use in judicially reviewing virtually <u>all</u> ERISA-plan benefit denials":

>  (1) Apply the <u>de novo</u> standard to determine whether the claim administrator's benefits-denial decision is "wrong" ( <u>i.e.</u>, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

>  (2) If the administrator's decision in fact is "<u>de novo</u> wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

>  (3) If the administrator's decision is "<u>de novo</u> wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

>  (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

>  (5) If there is no conflict, then end the inquiry and affirm the decision.

>  (6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

<u>Id.</u> (footnotes omitted).

Recently, in <u>Metropolitan Life Insurance Co. v. Glenn</u>, the Supreme Court cast doubt on the sixth step of this procedure. 128 S. Ct. 2343, 2350–51 (2008).

After the Court determined that the administrator of an ERISA plan operated under a conflict, it considered "'how' [a] conflict . . . should 'be taken into account on judicial review of a discretionary benefit determination.'" Id. at 2350 (quoting MetLife v. Glenn, 128 S. Ct. 1117 (2008) (mem.)). The Court concluded "that a conflict should 'be weighed as a factor in determining whether there is an abuse of discretion.'" Id. (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 957 (1989) (internal quotation marks omitted)). The Court explained that the consideration of a conflict as a factor did not require "a change in the standard of review" and criticized "special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict" that circuit courts had developed. Id. at 2351. The Court stated that "[b]enefits decisions" are too numerous in nature "to come up with a one-size-fits-all procedural system that is likely to promote fair and accurate review. Indeed, special procedural rules would create further complexity, adding time and expense to a process that may already be too costly for many of those who seek redress." Id. Although Glenn affects the sixth step of Williams, Glenn does not alter our analysis unless Coca-Cola operated under a conflict of interest.

We divide our discussion of the merits of this controversy in two parts. First, we address whether Coca-Cola reasonably interpreted the offset provision.

11

Second, we discuss whether Coca-Cola correctly interpreted the recoupment provision.

White and Warner also raise issues about litigation procedures that we need not address. Because the district court was correct to grant summary judgment in favor of Coca-Cola, the district court did not abuse its discretion in denying the motions of White and Warner for discovery and class certification. The resolution of the merits of this controversy obviates any issue about these procedures.

*A. Coca-Cola Reasonably Interpreted the Offset Provision.*

Our discussion of whether Coca-Cola reasonably interpreted the plan is divided in four parts. First, we address why the proviso clause of section 4.2(a) is ambiguous and the interpretation by Coca-Cola of that provision is wrong. Second, we address the discretion of Coca-Cola to interpret the plan. Third, we explain why the reconciliation by Coca-Cola of the conflicting provisions in the plan is reasonable. Fourth, we address whether Coca-Cola operated under a conflict of interest when it interpreted the plan.

1. The Interpretation by Coca-Cola of the Ambiguous Offset Provision is Wrong.

White and Warner argue that the interpretation of the offset provision by Coca-Cola is de novo wrong because the "only plausible interpretation of Section 4.2 [of the plan] would be to place a 60% cap and a 60% floor" on the benefits that

a participant receives. Coca-Cola responds that its interpretation is reasonable because the proviso clause of the offset provision conflicts with other provisions in the plan. Coca-Cola concedes that the district court correctly concluded that the proviso clause creates an ambiguity that the district court was permitted to construe against Coca-Cola as the drafter of the document.

We agree with Coca-Cola that the proviso clause conflicts with other provisions of the plan. Section 4.1(b) of the plan places a cap of 60 percent of a participant's average compensation on the benefits a participant may receive under the plan: "no Participant can receive a monthly benefit from this Plan in excess of 60 percent of his Average Compensation." The proviso clause then sets a 60 percent floor for benefits under the plan: "[T]he offset for other disability benefits will not serve to reduce the Disability Benefit under this Plan to an amount less than 60 percent of the Participant's Average Compensation." But it makes no sense to have both a 60 percent cap and a 60 percent floor when section 4.2(a) otherwise states that disability benefits cannot exceed 70 percent of the participant's average compensation. The 60 percent floor in the proviso clause also conflicts with section 3.4, which refers to the reduction of a participant's benefits below 60 percent of his average compensation if he receives disability benefits from other sources. Cf. Stewart v. KHD Deutz of Am., Corp., 980 F.2d

13

698, 703 (11th Cir. 1993) (identifying incompatible provisions of a benefits plan).

The problem for Coca-Cola is that this ambiguity favors White and Warner. Ambiguities in ERISA plans are construed against the drafter of the document, and a claimant's reasonable interpretation is viewed as correct. Lee v. Blue Cross/Blue Shield of Ala., 10 F.3d 1547, 1551 (11th Cir. 1994). Because the claimants' interpretation of a 60 percent floor is a reasonable reading of the proviso clause, the interpretation by Coca-Cola is de novo wrong. We agree with that ruling by the district court.

## 2. The Plan Vests the Committee with Discretion.

White and Warner concede that the plan grants the Benefits Committee complete and final discretionary authority to construe the plan and decide all questions arising under the plan, but they argue that we should not recognize that discretion for several reasons. Their arguments fail. We address each in turn.

White and Warner argue that we should not recognize the discretion of the committee to interpret the plan because the third-party administrator did not give them notice of the right to appeal the application of the offset and recoupment provisions to their benefits. We disagree. There is evidence in the record that White and Warner had notice of their right to appeal the decisions of the third-party administrators: the procedure for administrative appeals is outlined in every

14

summary plan description issued by Coca-Cola during the relevant time period. White also filed an administrative appeal of the decision.

White and Warner argue that the failure of the third-party administrator to notify them of their right to appeal violates federal regulations that govern notices sent to plan participants, see 29 C.F.R. § 2560.503-1(f)–(h), and they cite Torres v. Pittston Co., 346 F.3d 1324, 1333 n.11 (11th Cir. 2003), for the proposition that this failure permits courts to review the decisions of the administrator without deference. Torres creates no such permission. In Torres, we addressed whether a "deemed denial" of benefits under a plan receives less deference on judicial review than does a denial that does not occur by operation of ERISA regulations. We explained that the Labor Department "has taken the position that" failure to comply with minimum procedural safeguards permits courts to review the decisions of an administrator without deference. Id at n.11. We declined to adopt that broad position. We instead recognized that some courts review deemed denials de novo because they are not the result of plan administrators' discretion, and other courts "have held that the fact that the denial occurs by operation of ERISA regulations does not alter the otherwise-applicable standard of review." Id. at 1332-33. As the district court observed correctly, this division of authorities was limited to administrative failures to exercise discretion. This appeal does not

15

involve an administrative failure to exercise discretion, and <u>Torres</u> does not, in any event, require us to alter our standard of review.

White argues that the committee prejudged his appeal because it argued against his position in <u>Oliver</u> and <u>Byars v. Coca-Cola Co.</u>, No. 1:01-CV-3124-TWT, 2006 WL 2523095 (N.D. Ga. Aug. 28, 2006), where the plaintiffs advocated a 60 percent floor on benefits. White has not cited any authority to support his argument that a fiduciary's knowledge of how a disputed term was applied in collateral litigation renders that fiduciary incapable of conducting a full and fair review. As the district court concluded, the consultation of outside counsel by the committee mitigates any concerns about fairness and prejudgment. <u>See</u> <u>Adams v. Thiokol Corp.</u>, 231 F.3d 837, 845 (11th Cir. 2000). Fairness and prejudgment may be relevant to the determination whether the decision of the committee was arbitrary and capricious, but do not warrant a less-deferential standard of review.

White advocates a rule where an administrator cannot provide a plaintiff a full and fair review if the plaintiff is challenging a provision of a plan and the administrator previously was involved in a suit about the interpretation of that provision. This rule is unworkable. Administrators must constantly interpret plans, and an administrator occasionally will be sued by a participant who

16

disagrees with the administrator's interpretation.

White argues that John Howland, a member of the committee who voted to deny White's appeal, has a conflict of interest because he had been involved in the initial determination to offset White's benefits. The record does not support this argument. The emails relied upon by White do not evidence that Howland was involved in the initial decision to apply the offset and recoupment provisions to White's benefits.

The plan gives the committee discretion "to decide all questions arising under the Plan." The arguments of White and Warner that we should strip the committee of this discretion fail. Because section 7.2(b) of the plan gives the committee discretion, we review the interpretation of the offset and recoupment provisions by the committee under the "deferential arbitrary and capricious standard." Williams, 373 F.3d at 1138.

3. The Interpretation of the Offset Provision by Coca-Cola is Reasonable.

"As long as a reasonable basis appears for [the] decision [of the Committee], it must be upheld as not being arbitrary or capricious, even if there is evidence that would support a contrary decision." Jett v. Blue Cross & Blue Shield of Ala., Inc., 890 F.2d 1137, 1140 (11th Cir. 1989). As we explained earlier, the proviso clause conflicts with several provisions of the plan, which

17

creates an ambiguity. After the committee identified this ambiguity, it was permitted to consider extrinsic evidence to resolve it. Thiokol, 231 F.3d at 844; see also Stewart, 980 F.2d at 702.

The committee reasonably interpreted the proviso clause to make it consistent with the summary plan description, the past practices of Coca-Cola, and the other provisions of the plan. The summary plan description clearly explains the reduction of benefits if a participant receives benefits from other sources and provides an arithmetical example of the offset. The committee determined that it had been the established practice of Coca-Cola to permit an offset below 60 percent of a participant's average compensation. See Thiokol, 231 F.3d at 844 (fiduciary properly considered how a disputed plan provision had been interpreted in the past to resolve an ambiguity); Carriers Container Council, Inc. v. Mobile S.S. Ass'n Inc.-Int'l Longshoreman's Ass'n, 896 F.2d 1330, 1339 (11th Cir. 1990). The committee retained and followed the advice of outside counsel regarding both the offset and recoupment provisions. "There is no requirement that an administrator . . . seek independent counsel in interpreting and administering an ERISA plan," but seeking counsel establishes the "evenhandedness of [the] decision-making process" because it contributes to

18

"informed and knowledgeable decisions . . . in interpreting the Plan." Thiokol, 231 F.3d at 835.

White and Warner argue that the interpretation of the offset provision by the committee ignores the contra proferentem doctrine in Georgia law, but this argument fails. "[W]hen a federal court construes an ERISA-regulated benefits plan, the federal common law of ERISA supersedes state law." Buce v. Allianz Life Ins. Co., 247 F.3d 1133, 1142 (11th Cir. 2001). We have rejected contra proferentem in ERISA appeals, except during the first step of the Williams analysis, because "[t]he 'reasonable interpretation' factor and the arbitrary and capricious standard of review would have little meaning if ambiguous language in an ERISA plan were construed against the [plan administrator]." Cagle, 112 F.3d at 1519. Because we agree with the district court that Coca-Cola reasonably interpreted the offset provision, we next consider whether the committee operated under a conflict of interest.

4. The Committee Did Not Operate Under a Conflict of Interest.

White and Warner argue that the committee operated under a conflict of interest, but we disagree. White and Warner argue that the committee operated under a conflict of interest because the third-party administrator pays benefits to participants and is later reimbursed by the trust, but they cite no authority for this

19

argument. The delegation of a ministerial task to the third-party administrator does not create a conflict because benefits are paid by the trust and Coca-Cola "incurs no immediate expense as a result of paying benefits." Gilley v. Monsanto Co., Inc., 490 F.3d 848, 856 (11th Cir. 2007).

White and Warner contend that benefits are paid from the general assets of Coca-Cola and rely on two forms filed with the IRS in 2003 and 2004, which state that benefits were paid from both the trust and the general assets. Viewing this evidence in the light most favorable to White and Warner, the forms do not prove that benefits were paid from general assets in 2002 when the offset and recoupment provisions were applied to Warner, in 2005 when the provisions were applied to White, or in 2006 when White filed his appeal with the committee. White and Warner also argue that passages from several administrative information booklets, which accompany the summary plan descriptions each year, prove that benefits are paid from the general assets of Coca-Cola, but White and Warner misstate these passages, which state that general assets may be used to fund several benefits plans and that the "Long Term Disability Plan is funded through a trust to which the Company contributes."

The committee does not operate under a conflict of interest. "Our circuit law is clear that no conflict of interest exists where benefits are paid from a trust

20

that is funded through periodic contributions so that the provider incurs no immediate expense as a result of paying benefits." Id. at 856; see also Buckley v. Metro. Life, 115 F.3d 936, 939–40 (11th Cir. 1997). Under the plan, a participant's benefits are paid by the third-party administrator, which is refunded by the trust. Coca-Cola makes periodic, nonreversionary payments to the trust.

### B. Coca-Cola Correctly Interpreted the Recoupment Provision.

White and Warner next argue that the interpretation of the recoupment provision by the committee is de novo wrong and unreasonable. White and Warner contend that Coca-Cola cannot seek reimbursement of an overpayment of their benefits because Coca-Cola cannot establish that they were overpaid and the recoupment provision is unenforceable. We disagree.

The interpretation of the recoupment provision by the committee is de novo correct. The plain language of sections 4.2(d) and (e) of the plan permits the withholding of future benefits to recover any overpayment arising from a retroactive payment of benefits from outside sources. White and Warner offer no argument that this language is ambiguous.

White and Warner make four arguments about why the interpretation of the recoupment provision by the committee is erroneous, but these arguments fail. First, White and Warner argue that they were not overpaid, but this argument is

21

based on their interpretation of the offset provision, which is foreclosed by the reasonable interpretation of that provision by the committee. Second, White and Warner argue that Coca-Cola cannot seek a legal remedy under section 502(a)(3) of ERISA, which permits plan fiduciaries to seek only equitable relief. Although there are several decisions by the Supreme Court and our Circuit about what kind of relief is available to fiduciaries who sue beneficiaries under section 502(a)(3), see, e.g., Sereboff v. Mid Atl. Med. Servs., Inc., 547 U.S. 356, 126 S. Ct. 1869 (2006); Popowski v. Parrott, 461 F.3d 1367 (11th Cir. 2006), these decisions are inapposite because Coca-Cola has not sought judicial relief. Third, White and Warner argue that Coca-Cola may not recover any overpayment from their Social Security benefits, which they allege are protected from claims under federal law, Philpott v. Essex County Welfare Bd., 409 U.S. 413, 93 S. Ct. 590 (1973), but Coca-Cola is withholding future benefits under the plan. Fourth, White and Warner cite Smith v. Life Insurance Co. of North America, 466 F. Supp. 2d 1275 (N.D. Ga. 2006), for the proposition that ERISA precludes the enforcement of the recoupment provision, but that decision is inapposite. In Smith, the district court concluded, "Despite the [subrogation] language of the Plan, the federal common law make whole doctrine precludes [a plan administrator] from off-setting its monthly disability benefits" to account for a participant's tort recovery unless the

22

participant has been "made whole."  <u>Id.</u> at 1286.  This appeal does not involve a tort recovery or the make whole doctrine.

## IV.  CONCLUSION

We **affirm** the summary judgment in favor of Coca-Cola.

**AFFIRMED**.