**Sheryl HARVEY, Plaintiff,**

v.

**STANDARD INSURANCE COMPANY, Defendant.**

**Case No. 4:10–CV–3230–VEH.**

United States District Court,
N.D. Alabama,
Middle Division.

May 25, 2011.

Myron K. Allenstein, Rose Marie Allenstein, Allenstein & Associates, LLC, Gadsden, AL, for Plaintiff.

Briana M. Montminy, Burr & Forman LLP, Birmingham, AL, for Defendant.

### *ORDER*

VIRGINIA EMERSON HOPKINS, District Judge.

Plaintiff Sheryl Harvey ("Harvey") filed a Motion to Compel on April 13, 2011. (Doc. # 12). Defendant Standard Insurance Company ("Standard") filed its Response on April 27, 2011. (Doc. # 17). Harvey filed a Reply in Support of the Motion on May 6, 2011. (Doc. # 22). The Motion has been fully briefed and is ready for decision.

### I. *Background*

Harvey is a plan participant in a short and long term disability benefits plan issued by Standard to her former employer, Jeff Owens & Associates, Inc. ("the Plan"). (Doc. 17–1). This action involves Harvey's claims for long term disability benefits ("LTD") under the Plan; the Plan's filings indicate that she previously received short term benefits from the Plan.

The action was commenced in the Circuit Court of Etowah County (Doc. 1, Ex. A). Standard removed the action to this court. (Doc. # 1). There is no issue regarding subject matter jurisdiction. The Complaint alleges, and Standard agrees, that the action is brought under and controlled by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA").

The Motion to Compel relates to discovery sought by Harvey. Harvey has propounded to Standard two (2) combined sets of Interrogatories and Requests for Production of Documents. (Docs. 12–1 & 12–2). Standard filed general objections to each and every discovery request, and repeated the general objections verbatim in specific objections made as to each and every discovery request. Leaving aside the "canned" general and specific objections, Standard's position is that the court's review of its decision on Harvey's claim is limited to the administrative record, which Standard says it produced to Harvey as part of its Initial Disclosures. Standard bases its position factually on the "ALLOCATION OF AUTHORITY" provision of the Plan, which reserved to Standard all matters regarding policy interpretation, claims review and analysis, and payment of claim benefits. (Doc. 17–1 at p. 24). Standard's legal objections are that the court's review of Standard's decision on Harvey's disability claim is limited to Standard's (already produced) administrative record.

### II. *Standard of Review of ERISA Claim Decisions*

While more often found in a summary judgment opinion than in a discovery order, the court will address the standard applicable to its review of Standard's claim decision because that standard frames the court's review of Standard's denial of Harvey's claim, and that framework carries over to the court's analysis of the discovery issues raised in the Motion, Standard's Response thereto, and Harvey's Reply.

The standard of review analysis begins with *Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105, 108, 128 S.Ct. 2343, 2347–48, 171 L.Ed.2d 299 (2008):

> The Employee Retirement Income Security Act of 1974 (ERISA) permits a person denied benefits under an employee benefit plan to challenge that denial in federal court. 88 Stat. 829, as amended, 29 U.S.C. § 1001 et seq.; see § 1132(a)(1)(B). Often the entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket. We here decide that this

dual role creates a conflict of interest; that a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

As to the effect of *Glenn* on the standard of review in this Circuit, the court adopts the analysis set out in the most recent review of ERISA law in the Circuit Courts of Appeal by the Health and Insurance Law Committee of the American Bar Association Tort, Trial and Insurance Practice Section:

> Although not a case arising out of the Eleventh Circuit, [*Glenn* ], using *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 105–15, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) as its guide, modified three of the Eleventh Circuit's unique elements of the analysis a reviewing court applies to the claim administrator's denial or termination of ERISA benefits. *Glenn* firmly confirmed that where a claim administrator decides whether to pay the claim and pays it from its own assets, the administrator has a conflict of interest. Prior Eleventh Circuit cases held that such a conflict shifted the burden of proof to the claim administrator to prove that the conflict did not influence its claim decision. *Glenn* held that it is no longer the claim administrator's burden to prove lack of the influence of the conflict, it is the [Plan] participant's burden to prove the conflict influenced the claim decision. *Glenn* also held that a conflict is to be merely an element of proof in determining whether the claim decision was arbitrary and capricious. Finally, prior Eleventh Circuit cases held that, where

> there was a conflict, the burden on the claim administrator was "heightened" (a burden higher than arbitrary and capricious). *Glenn's* final influence removed that higher burden, leaving two standards of review, de novo and arbitrary and capricious.

American Bar Association Tort, Trial and Insurance Practice Section, *ERISA Survey of Federal Circuits,* 2010 Ed. at 370. ("ERISA 2010 Circuit Survey").

Following *Glenn,* the Eleventh Circuit, citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 108–09, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), said ERISA does not promulgate the standards against which a court should measure an ERISA plan administrator's claim decision, but that the Court of Appeals has adopted the following mode of analysis to review such a decision:

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

> (2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

> (3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

*Williams v. BellSouth Telecomms., Inc.,* 373 F.3d 1132, 1138 (11th Cir.2004), *abrogated on other grounds by Met. Life Ins. Co. v. Glenn,* 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008) (footnotes omitted). Moreover, if there is a conflict of interest, then the reviewing court must consider the conflict as being a factor in determining whether the plan administrator has acted arbitrarily and capriciously. *Met. Life Ins. Co.,* 128 S.Ct at 2346; *White v. Coca–Cola Co.,* 542 F.3d 848, 853–54 (11th Cir.2008).

*Lee v. BellSouth Telecommunications, Inc.,* 318 Fed.Appx. 829, 835–836 (11th Cir. 2009).

### III. *Brown, Glenn and ERISA Discovery*

Prior to *Glenn,* discovery in ERISA cases in this Circuit was controlled by a line of cases following the issuance of the Eleventh Circuit's decision in *Brown v. Blue Cross & Blue Shield of Alabama,* 898 F.2d 1556 (11th Cir.1990). Following the *Brown* framework, courts in this circuit allowed discovery bearing on the effect of the conflict on the claim decision. *See Miller v. Bank of America Corp.,* 401 F.Supp.2d 1372, 1379 (N.D.Ga.2005) (discovery permitted to allow plaintiff to obtain evidence that might refute any evidence that the carrier's interpretation of the plan was not tainted by self interest):

> As a result of these decisions, it was not uncommon to see experienced ERISA litigators in the circuit serving discovery requesting not merely the claim file and the summary plan description, but copies of telephone messages, e-mails, treatises, medical summaries, dictionaries, periodicals, and other texts used with regard to the claim. It is also quite common to see interrogatories or re-quests for admission to the defendant aimed at establishing whether the claim decision maker operated under an apparent conflict of interest based upon paying benefits out of its own assets. Aimed at this issue, litigants question whether the plan was not funded by stop-loss insurance or another policy, whether it was reimbursed by the employer for claims, whether a trust fund was established by the employer, whether any premium rebates were given to any employer based upon loss history, or more basically, whether anyone other than the insurer played any role in making the decision to deny benefits. *See Mazzacoli v. Continental Cas. Co.,* 322 F.Supp.2d 1376, 1380 (M.D.Fla.2004) (discovery permitted beyond record on issue of extent of employer's delegation of fiduciary responsibilities and the claim-handling process).

ERISA 2010 Circuit Survey at 374.

In determining the weight of the conflict of interest, the *Glenn* Court made the following observations in *dicta:*

> The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. *See Langbein, supra,* at 1317–1321 (detailing such a history for one large insurer). It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decision making irrespective of whom the inaccuracy benefits. *See* Her-

zel & Colling, The Chinese Wall and Conflict of Interest in Banks, 34 Bus. Law 73, 114 (1978) (recommending interdepartmental information walls to reduce bank conflicts); Brief for Blue Cross and Blue Shield Association as Amicus Curiae 15 (suggesting that insurers have incentives to reward claims processors for their accuracy); *cf. generally* J. Mashaw, Bureaucratic Justice (1983) (discussing internal controls as a sound method of producing administrative accuracy).

554 U.S. at 117–118, 128 S.Ct. at 2351.

In *Allen v. Life Ins. Co. of North America* 267 F.R.D. 407, 411–412 (N.D.Ga.2009), the most recent District court analysis the court has found, Judge Shoob surveyed the *post-Glenn* state of ERISA discovery law generally and in this Circuit specifically:

At present, there appears to be a circuit-split on the permissible scope of discovery in an ERISA action where a conflict of interest issue has been raised. *Compare Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 520 (1st Cir.2005) (finding that expanding discovery beyond administrative record to establish conflict of interest required a "serious claim of bias or procedural misconduct" towards plaintiff) *with Singleton v. Hartford Life & Accident Ins. Co.*, No. 4:08–CV–00361–WRW, 2008 WL 3978680, at *1 (E.D.Ark.2008) (noting that "*Glenn* did not change Eighth Circuit law governing the evidence a court considers under the abuse of discretion standard."). There appears to be a split within the Eleventh Circuit on the permissible scope of discovery in an ERISA action where a conflict of interest issue has been raised. The Eleventh Circuit has not yet weighed in on this matter. District courts in the Eleventh Circuit have also split on whether *Glenn* expands the scope of discovery where

there is a question about a plan administrator's conflict of interest. *Compare Wells v. Unum Life Ins. Co. of Am.*, 593 F.Supp.2d 1303, 1306 (N.D.Ga.2008) (denying expansion of discovery beyond administrative record in post-*Glenn* case) with *Mattox v. Life Ins. Co. of N. Am.*, 625 F.Supp.2d 1304, 1309–10 (N.D.Ga. 2008) (granting extension of discovery on conflict-of-interest issues outside of administrative record). (Footnote omitted).

■ In *Adams v. Hartford Life and Accident Ins. Co.*, 589 F.Supp.2d 1366 (N.D.Ga.2008), the court permitted discovery beyond the administrative record to the extent that facts known to the administrator at the time of denial were not contained in the official record, and said that such discovery could be had as to whether (1) the administrator fulfilled his or her fiduciary duties, (2) the proper procedures were followed in compiling the record, (3) the record was complete, and, if a conflict of interest existed, discovery into "the surrounding circumstances to determine whether such a conflict affected the benefits decision" *Id.* at 1368.

Put another way, resolution of the conflict of interest issue post-*Glenn* would of necessity have to involve more than "the facts as known to the administrator at the time the decision was made." *See Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137 (11th Cir.1989); *Buckley v. Metro. Life*, 115 F.3d 936, 941 (11th Cir.1997). While those facts are central to any review of the administrator's decision, it is unlikely that the administrative record is going to disclose much, if any, information about the conflict of interest. Such information is likely to be private business information (anything involving money paid to anyone other than the claimant would seem to fall into this category) and no one would expect to see such facts and details set out in

an administrative record of a claim decision. This court thinks there is still validity in the reasoning of *pre-Glenn* cases such as *Fish v. Unum Life Ins. Co. of America,* 229 F.R.D. 699, 701 (M.D.Fla. 2005) ("[D]efendant [erroneously] equates the Eleventh Circuit's decree limiting the court's review to the 'facts knows to the administrator' to be synonymous with the information contained in the administrative record.").

Like the ERISA 2010 Circuit Survey authors, and the district courts in Georgia, this court cannot reconcile the approach taken by the *Wells* court on the one hand with those taken by the *Allen, Adams,* and *Mattox* courts on the other. The latter cases seem more persuasive, not because there are more of them, or they represent the weight of authority, but because they seem to be consistent with the Supreme Court's *dicta* in *Glenn* quoted above, the previous discovery practices in the Eleventh Circuit post-*Brown, supra,* and because permitting discovery such as that sought here is more consistent with the reasoning of the ERISA 2010 Circuit Survey. The ERISA 2010 Circuit Survey authors, after noting the difficulty of reconciling the conflicting cases (specifically *Wells* and *Adams* ), go on to say "... it is equally difficult to argue that the breadth of discovery by courts in the Eleventh Circuit had much to do with the burden-shifting approach in the heightened arbitrary and capricious standard announced in *Brown.* One might even argue that placing the burden squarely on the plaintiff to establish that the conflict affected the claim decision warrants broader discovery post-*Glenn.*" *Id.* at 375.

 The court agrees. If conflict of interest is a factor to be considered, which *Glenn* says it is, and a conflict of interest is present, which it admittedly is here, then the plaintiff should not be limited to

the Plan's assertion that any such conflict did not affect the claim decision. Without such discovery, the existence of a conflict of interest would be analyzed in a vacuum, which would be at odds with *Glenn's* holding that "... the significance of the (conflict of interest) factor **will depend upon the circumstances of the particular case.**" *Glenn, supra,* 554 U.S. at 108, 128 S.Ct. 2343 (emphasis supplied). It would be reasonable to permit Harvey to attempt to ascertain the circumstances surrounding the conflict of interest, *e.g.,* whether the plan was or was not funded by stop-loss insurance or another policy, it was reimbursed by the employer for claims, whether a trust fund was established by the employer, whether any premium rebates were given to any employer based upon loss history, whether anyone other than the insurer played any role in making the decision to deny benefits, what financial incentives (if any) were awarded or available for claim denials and *vice versa,* what was the extent of the reviewing doctors' financial interest, did those doctors ever perform similar compensated reviews for claimants, and just how Standard handles, internally and externally, the conflict of interest and how that process affects Standard's financial bottom line.

For these reasons, Harvey's Motion to Compel is **granted,** and Standard's discovery objections are **overruled.** Harvey may have discovery in the areas delineated in *Adams* and in the immediately preceding paragraph, and any other areas relating to Standard's conflict of interest. Standard may have a Protective Order as to such information without the necessity of filing a motion to protect against the disclosure of confidential information. A form Protective Order can be obtained from chambers of the undersigned or Standard can file such a motion and propose its own Order.

In light of this Order and Standard's Response to the Motion to Compel, discovery as to the standard of review or the existence of a conflict is moot, *i.e.* Plaintiff's (First) Interrogatories 1.–5. and 7. The remaining discovery requests in Harvey's Interrogatories And Request For Production To Defendant (doc. 12–1) and Second Interrogatories And Request For Production To Defendant (doc. 12–2) are sufficiently tailored to the conflict of interest issue, and Standard is **ORDERED** to respond to them fully and completely within twenty-one (21) days of the entry of this Order.[1]

---

1. Because the court is granting Harvey's Motion to Compel, her Motion to Stay Defendant's Motion for Summary Judgment Pending Discovery (doc. 23), filed on May 20, 2011, is also due to be, and hereby is, **GRANTED.** Harvey's deadline to respond to Defendant's Motion for Summary Judgment (doc. 19) is hereby **EXTENDED** until 51 days after the entry date of this Order. Further, in light of such extension of time, and in anticipation of Harvey's filing an opposition that utilizes the discovery afforded to her by this Order, the court hereby **STRIKES** Plaintiff's Opposition to Summary Judgment (doc. 24), also filed on May 20, 2011.