[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11079
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-03680-TCB


SHARON PIERCE,

                                              Plaintiff - Appellant,

versus

WYNDHAM WORLDWIDE OPERATIONS,
INC.,

                                              Defendant,

CIGNA HEALTH AND LIFE INSURANCE
COMPANY,

                                              Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 24, 2019)

Before WILSON, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Sharon Pierce was covered by an Employee Retirement Income Security Act (ERISA) healthcare plan (the Plan) provided by her former employer, Wyndham Worldwide Operations, Inc. Cigna Health and Life Insurance Company administered the Plan. Pierce sought coverage under the Plan for a two-level spinal fusion surgery to treat her multilevel lumbar degenerative disc disease. Cigna denied Pierce's claim, concluding that the surgery was "experimental, investigational or unproven" and thus not covered by the Plan. Pierce sued, and the district court granted summary judgment for Cigna.[1] Pierce now appeals, arguing that Cigna's decision was improper under a deferential arbitrary and capricious standard. We disagree and affirm.

## I. Background

### A. The Plan

The Plan covered medically necessary services but excluded coverage for expenses "for or in connection with experimental, investigational or unproven services." The Plan defined those terms to mean procedures "that are determined

---

[1] Pierce also sued her former employer, Wyndham Worldwide Operations, Inc., for both wrongful denial of benefits under ERISA § 1132(a)(1)(B) and breach of fiduciary duty under 29 U.S.C. § 1132(a)(3). The district court dismissed Wyndham as a party. Pierce did not appeal that decision and Wyndham is not a party to this appeal.

by the utilization Physician to be . . . not demonstrated, through existing peer-reviewed, evidence-based, scientific literature to be safe and effective" for treating the condition.

## B. Pierce's Claim for Coverage

Dr. Max Stuer, a neurosurgeon, diagnosed Pierce with multilevel lumbar degenerative disc disease in early 2015. Dr. Stuer told Pierce, and later Cigna, that Pierce might need a two-level spinal fusion if she did not improve after injections. Cigna informed Pierce that Dr. Stuer was no longer part of its network, Pierce saw Dr. Arun Jacob, another neurosurgeon. Dr. Jacob also recommended a two-level spinal fusion, noting that it would give Pierce "a reasonable chance of recovery back to her baseline." Dr. Jacob requested prior authorization from Cigna to perform the surgery, which Cigna denied.

Two Cigna physicians reviewed the claim. The first, Dr. Greg Przybylski, concluded that, under the Plan's exclusion for experimental, investigational or unproven services, "coverage cannot be approved because there is not enough scientific evidence that shows the safety and/or effectiveness of lumbar fusion for the management of multiple-level degenerative disc disease." Dr. Przybylski referred to Cigna's Medical Coverage Policy on lumbar surgery (the Coverage Policy). The Coverage Policy states that "Cigna does not cover ANY of the following because each is considered experimental, investigational or unproven:

3

lumbar fusion for treatment of multiple-level (i.e., >1 level) degenerative disc disease . . . ." The Coverage Policy then refers to and explains the medical literature that supports that conclusion.[2]

Dr. Jacob appealed the denial of prior authorization. He compiled an appeal record, which contained medical records that confirmed Pierce's multilevel degenerative disc disease. Dr. David E. Mino, Cigna's National Medical Director of Orthopaedic Surgery and Spinal Disorders, reviewed the materials and upheld the denial of benefits.

## C. *Procedural History*

Pierce sued Cigna for wrongful denial of benefits under ERISA § 1132, which allows a plan participant to bring a civil action "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or

---

[2] The main takeaways from the literature review in the Coverage Policy are:
- "The general consensus in the medical literature is that the addition of multiple levels increases the complexity of the surgery and risks compared to single-level fusion. It has been reported in the literature that rate of nonunion (pseudoarthrosis) increases with multilevel fusions. Lumbar fusion of more than two segments (single level), is not typically recommended, particularly for degenerative disease, and is unlikely to reduce pain, as it removes normal motion in the lower back and may cause strain on other remaining joints. Added stress on nearby vertebrae can accelerate the degenerative process."
- "Determining if a disc is the primary source of pain is challenging and treatment, particularly surgical, is considered controversial for this indication [degenerative disc disease]."
- "Evidence supporting lumbar fusion however, as a method of treatment for DDD [(degenerative disc disease)] is limited, and few well-designed clinical studies have supported arthrodesis as superior to nonoperative therapy for improving clinical outcomes. (Resnick, et. al., 2005)."

to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Cigna filed a motion for summary judgment, which the district court granted, concluding that Cigna's denial of benefits was not arbitrary or capricious. Pierce appealed.

## II. Discussion

We review a district court's grant of summary judgment de novo, applying the same legal standards as the district court. *Doyle v. Liberty Life Assurance Co. of Bos.*, 542 F.3d 1352, 1358 (11th Cir. 2008).

### A. Deference to ERISA Plan Administrator's Coverage Decision

ERISA does not tell courts how to interpret ERISA plans, but federal courts "have the authority to develop a body of federal common law" to govern their interpretation and enforcement. *Tippitt v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1234–35 (11th Cir. 2006). Courts review the coverage decision of a plan administrator de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

In *Blankenship v. Metro Life Ins. Co.*, we outlined a six-part test for determining the appropriate standard of review under *Firestone*:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

644 F.3d 1350, 1355 (11th Cir. 2011). Under the first three steps, even when the administrator's decision was de novo wrong, we apply a deferential arbitrary and capricious standard if the plan vests the administrator with discretion to review claims.[3] *Id.* In reviewing a plan administrator's medical necessity determination,

---

[3] We need not decide whether Cigna's decision was de novo wrong. Instead, consistent with our precedent, we may assume the decision was de novo wrong in order to reach the discretion question. *See, e.g.*, *Doyle v. Liberty Life Assurance Co. of Bos.*, 542 F.3d 1352, 1357 (11th Cir. 2008) (on review of summary judgment, skipping straight to step two and determining whether the administrator had discretion to review benefit claims under the plan); *see also Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994) ("Discretion is the exception, not the

we only consider the material available to the administrator at the time it made its decision. *See id.* at 1354.

The first question, then, is whether the ERISA Plan vested the plan administrator with discretion to make coverage decisions. This grant of discretion must be apparent from the text of the Plan. *See Kirwan v. Marriot Corp.*, 10 F.3d 784, 788 (11th Cir. 1994) ("This circuit has interpreted [*Firestone Tire*] to mandate *de novo* review unless the plan *expressly* provides the administrator discretionary authority to make eligibility determinations or to construe the plan's terms."). The parties agree that the Plan expressly grants Cigna the discretion to make medical necessity determinations.[4] The arbitrary and capricious standard is therefore appropriate. *Blankenship*, 644 F.3d at 1355.

*B.  Reasonableness of Cigna's Coverage Decision*

The Plan excluded coverage for expenses "for or in connection with experimental, investigational or unproven services." The Plan defined those terms to mean procedures "that are determined by the utilization Physician to be . . . not demonstrated, through existing peer-reviewed, evidence-based, scientific literature to be safe and effective" for treating the condition. Through its Coverage Policy,

---

rule and . . . the arbitrary and capricious standard does not apply unless there is a clear grant of discretion to determine benefits or interpret the plan.").

[4] The Plan provided that "[t]he Plan Administrator [Wyndam] delegates to Cigna discretionary authority to interpret and apply plan terms and to make factual determinations in connection with its review of claims under the plan."

Cigna interpreted the Plan's "experimental, investigational or unproven" language and accompanying definition to exclude coverage for Pierce's two-level spinal fusion surgery.

That decision is not arbitrary and capricious if "reasonable" grounds supported it. *Id.* at 1355. "Plan administrators need not accord extra respect to the opinions of a claimant's treating physicians." *Id.* at 1356. And administrators "may give different weight to [certain doctors'] opinions without acting arbitrarily and capriciously." *Id.* As long as there is a reasonable basis in the record for Cigna's decision, it "must be upheld as not being arbitrary and capricious, even if there is evidence that would support a contrary conclusion." *White v. Coca-Cola Co.*, 542 F.3d 848, 856 (11th Cir. 2008).

Pierce argues that the "experimental, investigational or unproven" language is ambiguous, citing our decision in *Dahl-Eimers v. Mutual of Omaha Life Ins. Co.*, 986 F.2d 1379 (11th Cir. 1993). In *Dahl-Eimers*, a non-ERISA case, we held that the term "considered experimental" was ambiguous because "[t]he insurance policy does not clearly specify who will determine whether a treatment is considered experimental or how that determination will be made." 986 F.2d at 1384. *Dahl-Eimers* does not help Pierce for two reasons. First, the Plan here expressly defined the "experimental, investigational or unproven" term and specified who would make the determination. The Plan, therefore, cures the

8

precise defect that created the ambiguity in *Dahl-Eimers*. Pierce does not argue how the term, *as defined in the Plan*, is ambiguous. Second, even if that term was ambiguous, under the arbitrary and capricious standard, Cigna need only have reasonably interpreted it. *See Tippitt*, 457 F.3d at 1232 ("If [the administrator's interpretation] is reasonable, then the interpretation is entitled to deference even though the claimant's interpretation is also reasonable . . . ." (internal quotation marks omitted)).

In *White v. Coca-Cola Co.*, we held that an ERISA plan administrator reasonably interpreted a plan term when the administrator's interpretation was "consistent with the summary plan description, the past practices of [the employer], and the other provisions of the plan." 542 F.3d at 857. The summary plan description also "clearly explain[ed]" the administrator's interpretation. *Id.*

Cigna reasonably concluded that a two-level spinal fusion surgery falls under the "experimental, investigational or unproven" exclusion in the Plan. Under the definition in the Coverage Policy, Cigna had a reasonable basis for concluding that the procedure was "not demonstrated, through existing peer-reviewed, evidence-based, scientific literature to be safe and effective" for Pierce's degenerative disc disease. Cigna's Coverage Policy clearly explains the evidentiary basis for that determination. The Coverage Policy cites and details multiple peer-reviewed, evidence-based, scientific articles. *See supra* note 1. This

9

Coverage Policy was not created for Pierce. It was instead existing and uniformly applied.[5]

Pierce does not identify a single article to counter Cigna's position.[6] Pierce instead argues that because her physicians considered the procedure medically necessary, Cigna's interpretation was unreasonable. Pierce's argument is unconvincing. First, the opinions of Pierce's physicians only established that she had degenerative disc disease. Those opinions are not "existing peer-reviewed, evidence-based, scientific literature." And they are also not evidence that the two-level spinal fusion was not "experimental, investigational or unproven." Although Cigna reviewed those medical records as part of its determination, Cigna was not required to use Pierce's physicians' opinions to determine whether the surgery was "experimental, investigational or unproven." Second, even if Pierce's physicians opined that the procedure was not experimental, Cigna "need not accord extra

---

[5] To rebut this contention, Pierce cites *Dubaich v. Conn. Gen. Life Ins. Co.*, No. CV 11-10570 DMG, 2013 WL 3946108 (C.D. Cal. July 31, 2013). In *Dubaich*, Cigna took the position that spinal fusion was the "standard surgical treatment" for the participant's two-level degenerative disc disease. 2013 WL 3946108 at *3. The participant in *Dubaich* provided evidence that the surgery she sought—an artificial disc replacement—was non-experimental. *Id.* The district court correctly concluded that *Dubaich* is not evidence that Cigna inconsistently applied its Coverage Policy. First, Cigna's Plan and Coverage Policy cover spinal fusion in some scenarios, but they do not exist in this case. And it is unclear that the Coverage Policy at issue in *Dubaich* and the one at issue here are even the same. Pierce relies on language in *Dubaich* that discusses degenerative disc disease and spinal fusion generally. Second, the court in *Dubaich* reviewed the participant's claim de novo because there was no evidence that Cigna had discretionary authority. *Id.* at *8–9. *Dubaich* thus does not show that Cigna inconsistently applied the Coverage Policy in effect at the time it denied Pierce's claim.

[6] She only asserts, without citation, that "multi-level lumbar spinal fusion procedures were routinely accepted in the relevant medical community in 2015–2016."

respect to the opinions of a claimant's treating physicians." *Blankenship*, 644 F.3d at 1356. Third, if we accepted Pierce's argument, we would be reading out the "experimental, investigational or unproven" exclusion from the Plan entirely. Cigna would be required to cover every medically necessary procedure, even those that are expressly excluded under the "experimental, investigational or unproven" exclusion in the Plan.

Pierce has not identified any record evidence that the two-level spinal fusion surgery was "demonstrated, through existing peer-reviewed, evidence-based, scientific literature to be safe and effective" for degenerative disc disease. Cigna had a reasonable basis for concluding otherwise. *See White*, 542 F.3d at 857.

### C. Conflict of Interest

Because we conclude that Cigna's decision was supported by a reasonable basis in the record, the next task is to determine whether Cigna operated under a conflict of interest. *Blankenship*, 644 F.3d at 1355. A conflict of interest exists when the same entity both evaluates claims and pays benefits. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008). Pierce argues that Cigna acted under a conflict of interest because Cigna, as Wyndham's claims administrator, "had a financial interest in pleasing Wyndham." This financial relationship is too remote to establish a conflict of interest. *See Gilley v. Monsanto Co., Inc.*, 490 F.3d 848, 857 (11th Cir. 2007) ("Our circuit law is clear that no conflict of interest exists

11

where . . . the provider incurs no immediate expense as a result of paying benefits."). The benefits here were self-funded by Wyndham and were not paid from the funds of Cigna. Cigna and Wyndham are separate entities. This case thus lacks the structural conflict of interest articulated in *Glenn*.

There is no conflict of interest, which ends our inquiry. *See Blankenship*, 644 F.3d at 1355 ("If there is no conflict, then end the inquiry and affirm the decision.").

### III. Conclusion

Cigna had a reasonable basis for denying Pierce's claim for coverage. We therefore affirm.

**AFFIRMED.**