[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-11619

_____

D.C. Docket No. 3:10-cv-00192-MMH-TEM

KIMBERLY HOWARD,

Plaintiff - Appellant,

versus

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,
a corporation,
a.k.a. Hartford Life,
d.b.a. The Hartford,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 15, 2014)

Before TJOFLAT, FAY, and ALARCÓN,* Circuit Judges.

_____

* Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

PER CURIAM:

In this Employee Retirement and Income Security Act ("ERISA")[1] action, Kimberly Howard appeals from the district judge's order granting Hartford Life and Accident Insurance Company's ("Hartford") motion for summary judgment and motion to strike exhibits supporting Howard's motion for summary judgment. We affirm.

## I. BACKGROUND

A. Howard's Employment and the Plan

Howard was employed at Fidelity National Financial, Inc. ("Fidelity"), as a Business Strategy Manager. Her job required her to sit for six hours per day, walk or stand for two hours per day, "frequently" lift up to 10 pounds, and "occasionally" lift between 10 and 20 pounds. Her occupation also required "full use of the upper extremities, such as with fingering and handling, computer use and typing." R at 1001.

While employed at Fidelity, Howard was a participant in the Fidelity National Financial Inc. Group Benefit Plan (the ERISA "Plan"), which Hartford issued, insured, and underwrote. Hartford also funded and administered the Plan. Under the terms of the Plan, a participant is entitled to receive long-term disability

---

[1] 29 U.S.C. §§ 1001-1461.

("LTD") benefits if she meets the definition(s) of disability.[2]  R at 30.  For the first 24 months of a claimed disability, eligibility for long-term disability benefits is conditioned on a participant's submission of proof that she was prevented by an illness or injury from performing, on a full-time basis, "one or more of the Essential Duties of [her] Occupation."  R at 55.  "Essential Duty" is defined as "a duty that: 1. is substantial, not incidental; 2. is fundamental or inherent to the occupation; and 3. [cannot] be reasonably omitted or changed."  R at 55.  According to the Plan terms, Hartford has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the [Plan]."  R at 54.

B. Howard's Medical History and Benefits Award

In April 2005, Howard stopped working and applied for disability benefits. Her treating physician, Dr. Gary Decker, submitted to Hartford an Attending Physician's Statement, stating he had been treating Howard for "many years" and, in his opinion, "she should qualify for total disability" based upon her "multiple debilities."  R at 1443.  Dr. Decker reported Howard was 5'6" and weighed over 300 pounds.  He made a primary diagnosis of lupus, fibromyalgia, and severe joint

---

[2] The Plan defines "Disability or Disabled" to mean "during the Elimination Period and for the next 24 months [a participant] [is] prevented by: 1. accidental bodily injury; 2. sickness; 3. Mental Illness; 4. Substance Abuse; or 5. pregnancy, from performing one or more of the Essential Duties of [her] Occupation, and as a result [her] Current Monthly Earnings are no more than 80% of [her] Indexed Pre-disability Earnings."  R at 55.

pain, as well as secondary diagnoses of depression, short-term memory loss, and asthma. R at 1437. Dr. Decker concluded Howard "became unable to work due to impairment" on April 29, 2005. R at 1438. He listed Howard's impairments to include walking, sitting, lifting/carrying, pushing, pulling, driving, and keyboard use. In a second Attending Physician's statement, Dr. Decker listed his primary diagnosis as lupus and his secondary diagnosis as fibromyalgia. He reported Howard was precluded from performing several of the functions of her job, including standing or walking for more than a few minutes at a time and sitting for longer than an hour. Based on this information, Hartford approved Howard's claim for Short Term Disability benefits, which expired on November 3, 2005.

Beginning in July 2005, Hartford sent further inquiries to Dr. Decker and requested more information about Howard's health and limitations. He acknowledged Howard's lab work did not support lupus, but she was diagnosed "per Rheumatology." R at 1346. He also stated Howard was unable to work in sedentary to light positions because of "[s]evere joint pain" in her hips and hands, difficulty with handwriting, and "lower extremity swelling." R at 1346. Hartford later sent Dr. Decker a second questionnaire, based on a rheumatologist's findings that Howard was not experiencing spasms, severe joint pain, or other symptoms limiting her function. In response to Hartford's question as to how Dr. Decker determined Howard was having "severe problems" and "severe symptoms," he

4

stated his determinations were based on Howard's own reports of pain and multiple exams.

On October 22, 2005, Howard filed for LTD benefits.  Dr. Decker provided Hartford with an Attending Physician's Statement of Continued Disability, again reporting his primary diagnosis of lupus and fibromyalgia and his secondary diagnosis of severe joint pain, asthma, and depression.  He also completed a Physical Capacities Evaluation Form stating Howard could not sit for more than an hour at a time and could not stand for more than five minutes.  Additionally, Howard submitted a statement reporting she (1) was unable to multi-task because of short-term memory problems and chronic fatigue; (2) had suffered a loss of fine-motor skills; (3) was unable to life or carry more than 2 to 3 pounds; (4) could not stand or walk without support for more than a few minutes; (5) could not write more than a sentence or two without severe pain; and (6) had memory deficits, sometimes causing her to become confused or disoriented.

On November 1, 2005, Hartford advised Howard her claim for LTD benefits had been approved, effective November 4, 2005.  She also was advised an Independent Medical Examination ("IME") would be performed.  Dr. Mark Hofmann performed the IME and concluded, based on Howard's self-reported pain, Howard probably had fibromyalgia.  He provided restrictions of "[n]o lifting or carrying greater than 10 pounds occasionally, less than one hour per day of

5

keyboarding and repetitive hand motion, [and] avoidance of . . . standing/walking more than 10 minutes at a time." R at 1236. Based on the IME and Dr. Decker's submissions, Howard's LTD benefits were continued beyond November 2005.

C. Investigation and Termination of Benefits

Hartford initiated surveillance in March 2006 "[t]o better understand [Howard's] capabilities." R at 995. A total of 60 hours of surveillance was conducted over six days: March 30 to April 1 and May 8-10, 2006. The surveillance showed Howard running errands for extended periods of time, driving approximately 248 miles over one day, driving her daughter to and from school, sitting in her vehicle for 33 minutes, carrying groceries, and walking with and without her cane.

A Hartford investigator interviewed Howard, who gave a detailed statement regarding her condition, restrictions, and limitations. In her interview, she reiterated that she was prevented from working by chronic pain, she suffered "extreme fatigue" because of her fibromyalgia, she was not able to sit for more than one hour, she was able to stand only for 5 to 10 minutes and walk for 5 to 10 minutes, she could drive for only 30 minutes or less and not farther than 15 to 20 miles, and she used a cane to walk "90% of the time." R at 2482-90.

Subsequently, Hartford sent Howard's medical records, surveillance video, and surveillance reports to Dr. William Sniger, a Board-certified Physician in

6

Physical Medicine and Rehabilitation. After reviewing the file, Dr. Sniger made several observations, including that the activities seen in the video were "in excess of [Howard's] stated limitations," and "the preponderance of objective information does not appear to support the severity of the claimant's subjective symptoms or alleged inability to perform full-time work." R at 1013, 1014. Dr. Sniger concluded: "Based upon the subjective and objective information available to me, it is my opinion with a reasonable degree of medical certainty that the preponderance of information does not support the claimant's alleged inability to perform full-time work from a physical perspective." R at 1014.

In a letter dated November 15, 2006, Hartford terminated Howard's LTD benefits. The letter detailed the information within Howard's file and explained, after considering all of the evidence, "the combined information . . . d[id] not show that [Howard] [was] unable to perform the Essential Duties of [her] Occupation." R at 1002.

D. Howard's Appeal and Review

Howard appealed Hartford's termination decision. With her appeal, she submitted (1) a letter asserting some of her activities captured during surveillance were necessary to assist family members and advising her condition was more severe on some days than others, and (2) additional medical examination reports

7

and Attending Physician Statements in Support of Disability completed by Dr. Decker and Dr. Orlando Florete, a pain management physician.[3]

Hartford had Dr. Carol Walker, Ph.D., a neuropsychologist, review Howard's medical records.  Dr. Walker concluded "there is no objective data to support psychological or cognitive symptoms that would interfere with [Howard's] ability to work. . . . Cognitive and psychological issues have not been documented as the focus of treatment by her medical providers."  R at 2293.  Dr. Phillip Marion, a physician, also reviewed Howard's records and opined Howard's "continued complaints of incapacitating full body pain are inconsistent with her observed functional independence."  R at 2297.  Dr. Marion concluded Howard could work as long as she avoided overhead lifting with the left upper extremity.

Hartford thereafter notified Howard it was upholding the benefits termination.  Hartford explained Howard had been observed "performing activities in excess of her reported limitations and as such, her report is not entirely reliable.  Thus, the restrictions and limitations imposed by her physicians, being rooted in Ms. Howard's report almost exclusively, is likewise an unreliable indicator of Ms. Howard's functionality."  R at 2275.  Hartford concluded Howard was capable of light-duty work and the demands of her employment were of a sedentary capacity;

---

[3] Dr. Florete had diagnosed Howard with fibromyalgia, cervical degenerative disc disease, systemic lupus erythematosus, bilateral carpal tunnel syndrome, and a left shoulder rotator cuff tear, and described Howard as "totally and permanently disabled."  R at 2025.

8

therefore, "the weight of the evidence continues to support Ms. Howard's capacity to perform her occupation on a full-time basis." R at 2275.

Howard then filed suit against Hartford under ERISA and sought to reverse Hartford's decision to discontinue payment of her LTD benefits. The parties filed cross motions for summary judgment. In support of her motion for summary judgment, Howard attached 30 exhibits. These exhibits included a "Declaration of Howard's Counsel" regarding the exhibits, transcripts of depositions taken after Howard filed suit, interrogatory answers in this suit, deposition transcripts, interrogatory answers, and discovery documents from lawsuits against Hartford to which Howard was not a party, articles and information obtained from the internet, and contracts between Hartford and medical consultant vendors. Because none of the exhibits were available or considered by the Plan administrator, Hartford filed a motion to strike the exhibits.

The district judge construed the motion to strike as a motion in limine, granted the motion, and entered summary judgment for Hartford. The judge concluded Hartford's decision was reasonable, based on the evidence, and the challenged benefits decision was not arbitrary and capricious. *Howard v. Hartford Lift & Acc. Ins. Co.*, 929 F. Supp. 2d 1264 (M.D. Fla. 2013). On appeal, Howard argues the district judge erred by refusing to consider the exhibits attached to her

motion for summary judgment and failing to consider properly evidence regarding Hartford's financial conflict of interest.

## II. DISCUSSION

We review orders granting summary judgment in an ERISA case de novo and apply the same judicial standard to the administrator's decision used by the district judge. *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011). ERISA does not provide a standard for courts to review administrators' plan determinations, but "the Supreme Court articulated a framework for judicial review, which this circuit has distilled into a six-part test." *Melech v. Life Ins. Co. of N. Am.*, 739 F.3d 663, 672 (11th Cir. 2014) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, 109 S. Ct. 948, 956-57 (1989); *Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1138 (11th Cir. 2004)). Our test requires a reviewing judge to:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

10

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship*, 644 F.3d at 1355 (citation omitted). "The phrase 'arbitrary and capricious' and 'abuse of discretion' are used interchangeably." *Melech*, 739 F.3d at 672 n.14 (citing *Blankenship*, 644 F.3d at n.5).

It is well established a district judge's review of an administrator's discretionary benefits decision is confined to the evidence that was before the plan administrator. *Blankenship*, 644 F.3d at 1354. The burden is on the claimant to prove she is disabled and the administrator's decision was an abuse of discretion. *Id.* at 1355. When the administrator makes eligibility decisions and pays benefits, a structural conflict of interest exists and a judge must reach step 6 wherein "the burden remains on the [claimant] to show the decision was arbitrary; it is not the [administrator's] burden to prove its decision was not tainted by self-interest." *Id.* (citation and internal quotation marks omitted). Structural conflict of interest is only one factor in determining whether there was an abuse of discretion. *Glenn*, 554 U.S. at 108, 128 S. Ct. at 2346; *Blankenship*, 644 F.3d 1355.

There is no dispute Hartford had discretionary authority to construe the Plan and determine Howard's eligibility.  Review of Hartford's decision is governed by the deferential "arbitrary and capricious" standard.  *Blankenship*, 644 F.3d at 1355.  Because Hartford determines and pays the Plan benefits, the district judge must take into account any conflicts of interest in determining whether Hartford's denial was supported reasonably by the record before the administrator.  *Id.*

After reviewing the administrative record, the district judge concluded Hartford's termination of benefits was "entirely reasonable," and the structural conflict of interest did not warrant reversal of the decision.  *Howard*, 929 F. Supp. 2d at 1302.  We agree.  Howard's disability primarily was based on her diagnosis of fibromyalgia and lupus.  As we previously have recognized, fibromyalgia "often lacks medical or laboratory signs, and is generally diagnosed mostly on a[n] individual's described symptoms."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  Furthermore, the severity of fibromyalgia symptoms is "entirely subjective."  *Leger v. Tribune Co. Long Term Disability Benefits Plan*, 557 F.3d 823, 835 n.8 (7th Cir. 2009).  Howard's lupus symptoms similarly were subjective, because her lab work failed to support such a diagnosis.  Given the subjective nature of Howard's diagnoses, credibility in this case is of utmost importance.  *See Moore*, 405 F.3d at 1211, 1212 (recognizing, because fibromyalgia's "hallmark" is

12

the "lack of objective evidence," credibility determinations are critical to claims of impairment).

In terminating Howard's benefits, Hartford reviewed "all documents in [her] claim file . . . as a whole" and concluded she had "the ability to perform a sedentary to light occupation." R at 993, 1002. Hartford reviewed the surveillance of Howard that showed her performing activities she had claimed she was unable to perform. As the district judge noted, Howard's credibility was "seriously called into question by the surveillance video which shows her engaging in activities grossly inconsistent with her description of her abilities, and in stark contrast to her own treating physicians' assessments, which were based on Howard's subjective complaints." *Howard*, 929 F. Supp. 2d at 1299-300.

Hartford also reviewed the opinions of Howard's treating physicians as well as the opinions of the reviewing physicians and health care professionals. Hartford was entitled to rely on the reviewing health care professionals' assessments of Howard's capabilities, which were based on her medical records and the surveillance video. *See Turner v. Delta Family-Care Disability & Survivorship Plan*, 291 F.3d 1270, 1274 (11th Cir. 2002) (recognizing an administrator was entitled to rely on the opinion of an independent medical examiner in view of a surveillance report). We previously have determined an administrator's "use of 'file' reviews by independent doctors—instead of live, physical examinations" is

13

not arbitrary and capricious, "particularly in the absence of other troubling evidence." *Blankenship* 644 F.3d at 1357. The reviewing physicians recognized Howard's physical limitations, but they also had observed her in the surveillance video, examined her medical records, and determined she could perform her job. Howard failed to submit evidence showing the reviewing health care providers were tainted or biased, and Hartford's reliance on their opinions was not arbitrary or capricious. While there were some conflicting reports regarding Howard's condition, because Hartford based its decision on evidence in the administrative record and concluded Howard was not precluded from "performing one or more of the Essential Duties of [her] Occupation," we do not conclude Hartford's finding was arbitrary or capricious.[4] *See Turner*, 291 F.3d at 1274 (holding an administrator's decision to terminate benefits that was based on the record was not arbitrary or capricious regardless of whether "anyone else might reach a different conclusion").

---

[4] Howard additionally challenges the district judge's finding that Hartford's interpretation of the Plan's "Own Occupation" definition of "disability" was not arbitrary or capricious. She argues the Plan's definition of disability required her to establish she was unable to perform only *one* essential duty of her job and all physicians, including Hartford's IME physician, advised she was unable to type for extended periods of time. Howard, however, overlooks the fact that the Plan defined "Own Occupation" to mean "as it is recognized in the general workplace. Your Occupation does not mean the specific job you are performing for a specific employer or at a specific location." R at 57. Because we find the plain language of the Plan directed Hartford to evaluate Howard's ability to perform her occupation as a whole and not an isolated job assignment, we find Howard's argument to be meritless.

14

While Howard contends Hartford operated under a conflict and Hartford's decision to terminate her benefits was influenced by financial concerns, conflict of interest is just one factor to consider. *Blankenship*, 644 F.3d at 1355. The district judge recognized deference is given to the administrator's "discretionary decision-making" even where a conflict of interest exists. *Howard*, 929 F. Supp. 2d at 1301 (quoting *Blankenship*, 644 F.3d at 1355). Despite Howard's argument to the contrary, the district judge appropriately deferred to Hartford's decision regarding benefits while weighing the structural conflict of interest as one factor. *Blankenship*, 644 F.3d at 1355.

Finally, in her motion for summary judgment, Howard attached 30 exhibits, which she alleged related to Hartford's conflict of interest. Howard argues the district judge erred in failing to consider her exhibits; however, we find it unnecessary to resolve this argument, because the district judge did examine all exhibits Howard tendered but concluded these exhibits did not justify another result. The district judge stated:

> Here, Howard has submitted thirty exhibits, some of which she did not cite at all in her briefing, others she cited only by exhibit number despite the exhibit being hundreds of pages in length, and many of which are far-afield of Hartford's decision regarding Howard's specific LTD benefits eligibility. Only some of the exhibits were in existence at the time of the administrator's decision, and most importantly, none establish that an inherent or case-specific bias affected the administrator's decision in this case, or a higher likelihood that the structural conflict of interest affected the administrator's benefits decision.

15

*Howard*, 929 F. Supp. 2d at 1290-91 (footnote omitted).  We conclude the district judge did not err in her evaluation of the exhibits or in her conclusion that Howard failed to establish a conflict of interest of "sufficient inherent or case-specific importance."  *Id.* at 1291 (quoting *Blankenship*, 644 F.3d at 1357) (internal quotation marks omitted).  Therefore, we affirm both the district judge's granting summary judgment to Hartford and the motion to strike exhibits filed supporting Howard's summary judgment motion in this ERISA case.

**AFFIRMED.**