**Melinda NESS, Plaintiff,**

v.

**AETNA LIFE INSURANCE COMPANY, Defendant.**

**Case No: 8:16–cv–199–T–36TBM**

United States District Court, M.D. Florida, Tampa Division.

Signed 06/15/2017

Edward Philip Dabdoub, Dabdoub Law Firm, PA, Coral Gables, FL, Eric Whitehead, Ray Bourhis Associates, San Francisco, CA, for Plaintiff.

Jerel C. Dawson, Jonathan M. Fordin, Shutts & Bowen, LLP, Miami, FL, for Defendant.

## ORDER

Charlene Edwards Honeywell, United States District Judge

This matter comes before the Court upon Defendant Aetna Life Insurance Company's ("Aetna") Motion for Summary Judgment (Doc. 32). In the motion, Aetna contends that summary judgment should be entered because the decision to terminate long term disability benefits was not wrong. In the alternative, Aetna contends that summary judgment should be entered

even if the decision was wrong because the decision had a reasonable basis, and therefore, it was not arbitrary and capricious. Plaintiff Melinda Ness ("Plaintiff" or "Ness") filed a Cross–Motion for Summary Judgment[1] in Opposition to Defendant's Motion for Summary Judgment (Doc. 38) to which Aetna responded in opposition (Doc. 39). In the motion, Ness contends that Defendant's denial of long term benefits should be reversed because the decision: (1) was arbitrary and capricious; (2) was unsupported by strong, objective evidence in the administrative record; (3) was based on an invalid report; and (4) was based on financial self-interest. The Court, having considered the parties' submissions, the administrative record and relevant case law, and being fully advised in the premises, will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

## I. BACKGROUND AND STATEMENT OF FACTS[2]

This action seeks judicial reversal of Aetna's decision, as a claim administrator for an employee welfare benefit plan, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), § 502 (a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to terminate the long-term disability ("LTD") benefits of Ness. The Administrative Record contains the information reviewed by Aetna and provides the basis for its decision. According to the Administrative Record, Ness had LTD coverage as a participant in an employee welfare benefit plan (the "Plan") established and sponsored by her employer, Bank of America ("BOA"). A–329–330. The Plan was funded by a group insurance policy (the "Policy") issued to BOA by Aetna, which served as a claim administrator for the Plan. *Id.* The Policy expressly provided Aetna with "discretionary authority to determine whether and to what extent eligible employees and beneficiaries are entitled to benefits and to construe and interpret any disputed or doubtful terms of this Policy, the Certificate or any other document incorporated herein." A–2582. Under the terms of the Policy, LTD benefits were payable for up to 18 months to a participant who satisfied the applicable elimination period and was precluded by illness or injury from working in his or her "own occupation." A–2600. After that, eligibility for continued benefits was conditioned on the claimant's inability to work in "any reasonable occupation," defined in the Policy as any gainful activity for which the claimant is or may reasonably become qualified by education, training or experience, and which meets a specified minimum income level. A–2600, 2614.

Prior to claiming disability, Ness was employed by BOA as an Operations Project Consultant, which was a "sedentary" occupation in its physical demands. A–076, 172, 2355–2356. She was diagnosed with breast cancer (right) and subsequently stopped work on April 11, 2012 due to mastectomy surgery (right) which was scheduled shortly thereafter. A–76, 78–79. A prophylactic mastectomy of the left breast was performed in April 2013. A–2420. Ness subsequently complained of neck pain, as well as low back pain associated with a herniated lumbar disc at L4–5 (she had undergone spinal fusion surgery in 1984 at L5–S1 at age 16) and failed back

1. The Court notes that Ness' Cross–Motion for Summary Judgment was untimely filed on January 6, 2017. The deadline for filing dispositive motions was December 9, 2016. *See* Case Management and Scheduling Order at docket entry 19. Nevertheless, in an effort to address all of the issues raised in this matter and because Aetna has no objection, the Court has considered the motion.

2. The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including the administrative record.

syndrome. A–95, 162, 2379, 2419. Ness was approved for "own occupation" LTD benefits effective October 26, 2012. A–381–382. In September 2013, Ness was advised by Aetna that her eligibility for continued LTD benefits effective April 26, 2014 would be governed by the "any reasonable occupation" test. A–401–402.

On February 19, 2014, Ness was seen by treating pain management physician Lynn Fassy, M.D., for a follow-up examination and the doctor's completion of "disability paperwork." A–1375. Plaintiff complained of lower back and leg pain, as well as "fatigue, fogginess, and memory loss" due to pain medications. *Id.* On examination, Dr. Fassy observed that Ness' recent and remote memory were both intact and that her concentration was within normal limits. A–1377. On the same date, Dr. Fassy completed an undated Attending Physician's Statement ("APS") identifying a primary diagnosis of "failed back syndrome" and a secondary diagnosis of herniated nucleus pulposus. A–2116–2117. Dr. Fassy further advised that Ness had "no ability to work" and was "unable to sit, stand or walk for more than 10 minutes" without change of position and that "medications for severe pain significantly decrease [her] cognitive abilities and concentration." A–159, 2116–2117.

On March 5, 2014, Ness was again seen by Dr. Fassy, who noted her complaints of pain in her neck, mid and lower back, bilateral legs, and right shoulder. A–1369. He further noted that her recent and remote memory were "intact" and that her concentration was "within normal limits." A–1372. At Aetna's request, an Independent Medical Examination ("IME") was conducted by physical medicine & rehabilitation physician Susan Aull, M.D. on March 21, 2014 in order to furnish Aetna with more detailed information concerning Ness' condition and functionality. A–2424–2428.

Dr. Aull noted Ness' complaints of constant and worsening back pain that radiated down her legs, pain which was reportedly exacerbated by standing, walking and reaching. A–2425. Dr. Aull's physical examination of Ness indicated: (a) limited cervical range of motion, with right rotation of 0–60 degrees and left rotation of 0–70 degrees but with full extension; (b) full pain-free range of motion in both extremities; (c) Spurling's sign, Lhermitte sign, and Horner's sign were all negative; (d) straight leg raising test was negative; and (e) both lower extremities had normal tone and range of motion. A–2526–2527. Dr. Aull then concluded that Ness was capable of working four hours per day with "occasional" sitting, standing and walking, adding that she could "sit for greater than 20 minutes," stand and/or walk for five minutes and then sit and rest for 15 minutes, and lift 10 pounds occasionally. A–2424, 2426. After reviewing the IME report, Aetna clinical consultant Kathy McGrath observed that Dr. Aull's physical restrictions did not "correlate with [the IME] exam findings" and that the IME report did not clearly indicate the reasons that Ness could work only four hours per day. A–182.

On April 7, 2014, Ness was again seen by Dr. Fassy, who noted her complaints of pain in her neck, lower back and legs. A–1362. He further noted that Ness' recent and remote memory were "intact" and that her concentration was "within normal limits." A–1365. Dr. Fassy again reported intact memory and normal concentration in an office visit on May 6, 2014. A–1357. On June 11, 2014, Ness was seen by her treating oncologist, Jameel Audeh, M.D., who found "no evidence of recurrent breast cancer." A–1894. Dr. Audeh observed that Ness' "recent and long-term memory" appeared "normal for [her] age." *Id.*

On June 24, 2014, at Aetna's request, a Functional Capacity Evaluation ("FCE") was conducted by Sean McCue, MPT (Master of Physical Therapy), CFCE (Certified Functional Capacity Evaluator). A–2379–2401. The FCE included multiple assessments of the degree of effort put forth by Ness during the various physical/functional tests and activities comprising the evaluation. *Id.* Explaining that "[v]alidity of effort is determined by isometric and dynamic tests, hand tests and consistency of movement patterns," Mr. McCue reported that Ness had put forth an "invalid and very poor effort." A–2379. He further advised that Ness had demonstrated "typical Symptom Magnification behavior" with only a "moderate level of subjective pain." *Id.*

With respect to functionality, Mr. McCue stated that Ness "did not demonstrate a Functional Strength Deficit (FSD) for her back," thus indicating that "her strength in her back is not statically less than other major joints of her body." A–2380. The FCE indicated that Ness' "injured area" had "returned to normal or near-normal function." A–2389. Mr. McCue concluded that Ness had demonstrated "sedentary" work capacity. A–2380–2381. A copy of the FCE report was forwarded by Aetna to Dr. Fassy, who responded by opining that Ness was unable to work in any capacity because of her then upcoming surgery and "ongoing pain" which necessitated daily use of medication. A–2357–2358. Based on the sedentary functionality established by the FCE, a Transferable Skills Analysis ("TSA") performed by Aetna identified multiple suitable, gainful sedentary occupations that were consistent with Ness' work experience and physical abilities. A–2339–2352. On June 30, 2014, Dr. Fassy again observed that Ness had intact memory and normal concentration. A–1344. He also noted she did not "appear overmedicated." A–1343. On July 30, 2014, Dr. Fassy again observed that Ness had intact memory and normal concentration, and that she did not appear overmedicated. A–1337–1338.

On August 4, 2014, a clinical review was conducted for Aetna by Margaret Rosier, RN, who reviewed the responses and treatment records supplied by Dr. Fassy and advised that the provided material did not contain any description of "current abnormal physical exam findings, lumbar [range of motion], gait, activities, description of medical treatment, name, dosage of narcotics, [or] the specifics of side effects that are disabling [Ness] from performing a sedentary [occupation]." A–224–226. On August 20, 2014, Aetna was advised that Ness had been awarded Social Security disability ("SSD") benefits by the Social Security Administration ("SSA"). A–234–235.

In correspondence dated August 29, 2014 (A–459–462), Aetna notified Ness of its decision to terminate LTD benefits effective September 8, 2014, on the ground that the available evidence did not support the presence of "any functional impairment in your physical or mental capacity which would prevent you from performing the material duties of your own sedentary occupation on a full-time basis." A–461. Aetna also noted multiple sedentary occupations identified by the TSA as being within Ness' capabilities and qualifications. *Id.* Noting treating physician Fassy's opinion that Ness was unable to work due to her reported back pain and the effects of her medications, Aetna explained that Dr. Fassy had not provided "observable findings ... or test results, MRI's, X-rays, or medical [evidence] to substantiate his comments." *Id.* Aetna also acknowledged Ness' SSD award but noted that Aetna had not been provided with the SSA's decision, and further explained that Aetna's disability determinations and those of the SSA were governed by different standards and often

relied on different types of information. A–462.

On October 7, 2014, Ness was seen by treating oncologist Audeh, who reported "no evidence of recurrent breast cancer" and observed that Ness' recent and long-term memory appeared "normal for [her] age." A–1862. On November 4, 2014, Ness was again seen by Dr. Audeh, who again reported no evidence of recurrent breast cancer and observed that Ness' recent and long-term memory appeared normal for her age. A–1813–1820.

On March 3, 2015, Ness, through counsel, appealed the LTD benefits termination along with supplemental medical documentation. A–2131–2312. In the letter, counsel argued that Ness was entitled to the LTD because she was "unable to concentrate, maintain coherent conversations, or conduct statistical analysis." A–2131. This alleged cognitive impairment was due to the medications Ness took to prevent her cancer from returning, severity of her back pain and the effects of the narcotic pain medications prescribed to control it. A–2132. Counsel also stated that Ness was physically unable to sit, stand or walk for any length of time due to chronic severe pain caused by multiple back conditions including lumbar disc herniation, lumbar disc bulge, lumbar spinal stenosis, facet joint hypertrophy, and lumbar radiculopathy. A–2132–2136. Counsel alleged that Ness was unable to perform her occupation, which required her to "sit at a computer" for a full work day and pointed out that she had been awarded Social Security Disability benefits which provided additional evidence of her eligibility for continued LTD benefits under the Policy. A–2136–2138.

In order to evaluate Ness' appeal, Aetna sought an independent peer review which was conducted by Board Certified occupational medicine physician Evelyn Balogun, M.D., who reviewed the file and provided a report dated April 30, 2015. A–563–568. Dr. Balogun did not speak with Ness' treating physician Dr. Fassy. *Id.* Noting that Ness' treating providers had repeatedly described normal appearance and cognition, Dr. Balogun concluded that the "medical records do not establish that [Ness] was functionally impaired during the period of 04/27/2014 to present." A–566–567. In reaching this conclusion, Dr. Balogun also noted the FCE evaluator's findings of "poor effort" and "symptom magnification behavior." A–566.

A copy of the SSA disability determination was requested from Ness' counsel and received on June 9, 2015. A–576–582. The SSA decision was forwarded to peer review physician Balogun for review. Explaining in an addendum report (A–572–574) that the SSA decision did not change her previous assessment, Dr. Balogun noted that the SSA had given significant consideration to Ness' "age, education, work experience and residual functional capacity in reaching the conclusion that the claimant was disabled," and those factors did not establish an identifiable physical or mental impairment. A–574. Copies of Dr. Balogun's initial and addendum reports were forwarded to treating physician Fassy with a request for his comments, but no response was received. A–481. The decision was then made by Aetna to uphold on appeal the termination of LTD benefits under the "any reasonable occupation" definition of disability, with Ness' counsel being so advised in correspondence dated July 1, 2015. A–480–483. Based on the FCE, peer reviewer Balogun's report, and the office notes of treating physicians Fassy and Audeh, Aetna concluded that Ness had "no functional or cognitive impairment" and was capable of full-time sedentary work. A–482–483. Acknowledging the SSA's determination, Aetna advised that the SSA had relied on evidence that "differs significantly from the information we

now have in the LTD claim," which meant the SSA decision had been accorded "little weight" in Aetna's evaluation of Ness' eligibility for additional LTD benefits. A–482.

Finally, Aetna informed Ness' counsel that its appeal decision was final and not subject to further review. A–483. Although Aetna had made its final decision on appeal, Plaintiff's counsel subsequently requested that Aetna reevaluate the claim based on alleged errors contained in the appeal denial letter. A–500–505. Aetna again advised counsel for Ness that its final decision had been made and was not subject to further review. A–486.

## II. LEGAL STANDARD

■ Generally, summary judgment[3] is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving

party can show the court that there is "an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548.

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. *Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)). Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *Id.* at 1555–56.

■ In the Eleventh Circuit, "review of the plan administrator's denial of benefits

---

**3.** Although this case comes before the Court on a motion for summary judgment, the summary judgment standard set forth in Fed.R.Civ.P. 56 is incongruent with the ERISA standard of review. *Compare* Fed.R.Civ.P. 56(c) and *Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1138 (11th Cir. 2004), *overruled on other grounds by Doyle v. Liberty Life Assurance Co. of Boston*, 542 F.3d 1352 (11th Cir. 2008). The Eleventh Circuit charges the district court with determining *de novo* whether the administrator's decision was wrong, *Williams*, 373 F.3d at 1138, rather than whether there are questions of material

fact that require trial and whether the parties are entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). There may indeed be unresolved factual issues evident in the administrative record, but unless the administrator's decision was wrong, these issues will not preclude summary judgment as they normally would. *See Crume v. Metro. Life Ins. Co.*, 417 F.Supp.2d 1258, 1272–73 (M.D. Fla. 2006) (conducting an in-depth discussion of interplay between ERISA and summary/cross summary judgment standards as applied by courts in the Middle District of Florida and elsewhere).

is limited to consideration of the material available to the administrator at the time it made its decision." *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355–56 (11th Cir. 2011). ERISA itself provides no standard for courts reviewing the benefits decisions of plan administrators or fiduciaries. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 953, 103 L.Ed.2d 80 (1989). As a result, and based on the Supreme Court's guidance in *Firestone* and *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343, 2348, 171 L.Ed.2d 299 (2008), the Eleventh Circuit has established a multi-step framework to guide courts in reviewing an ERISA plan administrator's benefits decisions. *Blankenship*, 644 F.3d at 1355. Under this multi-step approach, a district court must:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.[4]

*Id.* (citing *Capone v. Aetna Life Insurance Company*, 592 F.3d 1189, 1195 (11th Cir. 2010)).

 At step four of the test, a conflict of interest exists "where the ERISA plan administrator both makes eligibility decisions and pays awarded benefits out of its own funds." *Id.* (citing *Glenn*, 554 U.S. at 105, 128 S.Ct. 2343. Even if a conflict exists and, accordingly, a court reaches step six, "the burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." *Doyle*, 542 F.3d 1352, 1360 (11th Cir. 2008). The severity of the conflict and the nature of the case will determine the effect that a conflict of interest has in any given case and, accordingly, the Court will look to the conflict's "inherent or case-specific importance." *Blankenship*, 644 F.3d at 1355 (citing *Glenn*, 554 U.S. at 117, 128 S.Ct. at 2351–52). After *Glenn*, the existence of a conflict of interest should merely be a "factor" for the district court to take into account when determining whether an administrator's decision was arbitrary and capricious, but the basic analysis still centers on whether a reasonable basis existed for the administrator's decision. *See id.* (citing *Conkright v. Frommert*, 559 U.S. 506, 521, 130 S.Ct. 1640, 1651, 176 L.Ed.2d 469 (2010) (noting that the plan administrator's interpretation of the plan "will not be disturbed if reasonable.")).

---

**4.** In ERISA cases, the phrases "arbitrary and capricious" and "abuse of discretion" are used interchangeably. *See Jett v. Blue Cross &* *Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989).

■ As both the Eleventh Circuit and the Supreme Court have noted, "the presence of a structural conflict of interest [is] an unremarkable fact in today's marketplace [and] constitutes no license, in itself, for a court to enforce its own preferred *de novo* ruling about a benefits decision." *Id.* at 1356; *see also Glenn*, 554 U.S. at 120, 128 S.Ct. at 2353 (noting that a "conflict of interest ... is a common feature of ERISA plans.") (Roberts, C.J., concurring in part and concurring in the judgment). However, even where a conflict of interest exists, courts still owe deference to the plan administrator's "discretionary decision-making" as a whole. *Doyle*, 542 F.3d at 1363; *see also Glenn*, 554 U.S. at 120, 128 S.Ct. at 2353 (noting the "deference owed to plan administrators when the plan vests discretion in them").

## III. DISCUSSION[5]

The parties do not dispute that Plaintiff had been diagnosed with breast cancer, suffers degenerative disc disease, failed back syndrome, lumbar radiculopathy and spinal stenosis. Instead, the parties disagree about whether the proper evidence was considered when Aetna terminated Plaintiff's LTD benefits. The Court will now address the first analytical step.

### 1. Aetna's decision was not de novo wrong (Step 1).

■ Plaintiff contends that Aetna's decision was unsupported by objective evidence in the administrative record. For the reasons that follow, Plaintiff's contentions are without merit.

### a. FCE

Plaintiff submits that Aetna's reliance on physical therapist Sean McCue's FCE report to deny her LTD benefits was wrong and logically inconsistent. First, Plaintiff points out that McCue labeled the FCE report "invalid with very poor effort" but Aetna still used the results to deny her benefits. Second, according to the Plaintiff, McCue found that her symptoms were consistent with disability but ultimately opined that she could work full time in a sedentary capacity without limitations. Third, Plaintiff maintains that the medical opinions of her treating physician, Dr. Lynn Fassy, and independent medical examiner, Dr. Susan Aull, should have been given deference over McCue's opinion because he was not a physician and was paid by Aetna.

Additionally, Plaintiff contends that McCue's FCE findings and data collection were erroneous. Ness asserts that the report "states that FCE testing with more than 20 Validity Criteria are considered valid," and her "tests contained 22 Validity Criteria." *Id.* Therefore, Ness contends that McCue's "conclusion that Plaintiff exaggerated her symptoms is erroneous." *Id.* As a result, Ness maintains that McCue's FCE report should not have been used to deny her benefits.

In response, Aetna disputes Plaintiff's contentions. In fact, Aetna maintains that the FCE showed that Ness was capable of sedentary work and thus not disabled within the meaning of "any occupation" definition of the LTD policy. Defendant also maintains that Ness' "very poor effort" during testing undermined her credibility. And lastly, Defendant maintains that the validity of a patient's effort during an FCE is measured as a percentage of validity tests that he or she passes, and in Ness' case, her effort was objectively inadequate.

Plaintiff's contention that a physical therapist's FCE report is not reliable evi-

---

**5.** To the extent that Plaintiff's Cross–Motion for Summary Judgment responds to the issues raised by Aetna's Motion for Summary Judg-ment, the Court will address the contentions jointly.

dence in an ERISA disability case or that it is somehow inferior to a physician's opinion is without merit. Physical therapists are in fact "licensed health care professionals" who "help patients reduce pain and improve or restore mobility." *Ortega–Candelaria v. Johnson & Johnson,* 755 F.3d 13, 24 (1st Cir. 2014) (citation. omitted). In· regard to the validity profile[6] noting poor efforts by Ness, the record shows that Ness passed 22 of the 49 validity criteria, or 45 percent. *See* A–2400. Thus, Plaintiff's understanding of the findings is mistaken.

Furthermore, the Eleventh Circuit has specifically recognized that ERISA administrators tasked with deciding disability claims "routinely rely on FCEs," which are "routinely conducted by .physical therapists." *Townsend v. Delta Family–Care Disab. and Surv. Plan,* 295 Fed.Appx. 971, 977 (11th Cir. 2008) (affirming summary judgment for administrator that relied on FCE in denying benefits); *Lake v. Hartford Life and Acc. Ins. Co.,* 320 F.Supp.2d 1240, 1249 (M.D. Fla. 2004) (noting that "the best means of assessing an individual's functional level" is a FCE.). Moreover, since the FCE showed that Ness had the ability to perform sedentary work capacity, Aetna's decision to terminate benefits was not wrong. *See Moeller v. Guardian Life Ins. Co.,* No. 5:10–cv–457, 2011 WL 7981954, *8 (M.D. Fla. Dec. 16, 2011) (finding that the FCE which showed Plaintiff could perform sedentary to light work supports the administrator's determination that plaintiff was not totally disabled from any gainful work.).

**b. FCE and McCue's Ethics**

Ness contends that McCue conducted the FCE testing in an extremely unethical manner when he attempted to have Ness change her answers to test questions. Ness further contends that Aetna did not investigate McCue's conduct. As such, Ness submits that the FCE should not have been used to deny her LTD benefits. In reply, Aetna disputes this assertion and indicates that the allegations involving McCue's ethics were not raised until after the LTD benefits were terminated. Even though Plaintiff's counsel now asserts that "counsel raised this complaint with Defendant as part of the claim appeal," (Doc. 38 at p. 19) Aetna maintains that this contention is demonstrably inaccurate.

A review of the record reveals that Aetna is ·correct. Aetna initially terminated benefits on August 29, 2014. A–459–462. Thereafter, Ness retained counsel, who appealed the decision on her behalf on March 3, 2015, submitting an appeal letter and assorted medical records. A–2131–2312. The appeal letter did not mention the allegedly "unethical" acts or practices by therapist McCue. Thereafter, Aetna denied the appeal and upheld the benefits termination decision on July 1, 2015, advising Ness' counsel in writing that the appeal decision was "final." A–480–483. Over one month later, on ·August 6, 2015, Ness' counsel sent Aetna a letter citing various alleged errors in Aetna's appeal denial letter and requesting further evaluation of Ness' eligibility for continued benefits. A–513–516. It was in that letter that Ness' counsel suggested-for the first time-that the FCE had been "performed unethically." A–515.

 Here, the record demonstrates that Aetna's decision was properly based on the materials it had available at the time of its

---

**6.** The validity profile for the FCE conducted by McCue in this case consisted of 49 validity criteria. A–2398–2400. A table set forth in the report states that if the patient passes 90–100% of an FCE's validity criteria, this indi- cates "excellent" effort; 80–89% represents "good" effort; 70–79% means "fair" effort; 60–69% shows "poor" effort; and below 60% indicates "very poor" effort with "invalid" results. A–2398.

decision. In fact, ERISA law makes clear that judicial review of an ERISA benefits decision is "limited to consideration of the material available to the administrator at the time it made its decision." *Blankenship,* 644 F.3d at 1354. Because Ness' allegations about McCue's misconduct were not made at the time of Aetna's final decision on appeal and were not later considered by Aetna, the Court will not consider any such allegations now. Accordingly, Ness' conclusory allegations against McCue are insufficient to show that Aetna's reliance on McCue's report was clearly wrong at the time the decision was made.

#### c. Aetna's medical reviewers

Plaintiff maintains that Aetna's independent medical examiner Dr. Aull's opinion which found that Ness' functionality was limited to working only four hours per day should have been given deference in determining that she was disabled within the meaning of the Policy. Ness further maintains that independent peer reviewer Dr. Balogun's report, which found no evidence of significant functional impairment, should not have been used to deny her LTD benefits because the report was conclusory. In reply, Aetna argues that Dr. Aull's opinion could not have been given deference because the report failed to document/explain the basis of its conclusions regarding functionality. Aetna further maintains that independent peer reviewer Dr. Balogun's report was properly sought in order to clarify Ness' functional capabilities. Defendant further maintains that despite Ness' treating physician's advocacy to the contrary, its decision was supported by the FCE, independent peer reviewer Dr. Balogun's opinion and the ALJ's opinion.

Ness' contention in regard to the medical reviewers is also without merit. Under well-settled ERISA law, the administrator is "entitled to rely on the opinion of a qualified [medical] consultant who neither treats nor examines the claimant, but instead reviews the claimant's medical records." *Richey v. Hartford Life and Acc. Ins. Co.,* 608 F.Supp.2d 1306, 1312 (M.D. Fla. 2009). Indeed, such reliance is "entirely appropriate" even where the reviewing consultant's report "rebut[s] the opinion of the treating physicians asserting claimant is disabled." *Hufford v. Harris Corp.,* 322 F.Supp.2d 1345, 1359 (M.D. Fla. 2004). Moreover, a plan administrator "need not accord extra respect to the opinions of a claimant's treating physicians" in assessing the claimant's work capacity. *Blankenship,* 644 F.3d at 1356. Thus, Aetna's decision was not wrong. Indeed, it was entirely reasonable for Aetna to prefer the opinions of its own independent medical examiner over the findings of Ness' treating physician. *See Howard v. Hartford Life & Acc. Ins. Co.,* 929 F.Supp.2d 1264, 1294–95 (M.D. Fla. 2013), *aff'd* 563 Fed.Appx. 658 (11th Cir. 2014) (noting that "doctors' diagnoses do not, in and of themselves, establish a disability and inability to work" and "subjective complaints do not become objective simply because a doctor wrote them down.").

#### d. Cognitive Impairment

Plaintiff maintains that as a result of her heavy regimen of narcotic pain medications she suffers from a cognitive impairment which precludes her return to full time work. Plaintiff also maintains that Dr. Fassy's notes confirmed that she is impaired. Plaintiff further argues that to the extent that Dr. Fassy's notes show "normal memory" and "normal cognition" in a physical exam, this does not mean that she has the full cognitive function necessary to engage in her former occupation for eight hours per day. Lastly, Plaintiff maintains that Aetna's attempt to discredit Plaintiff's self-reported pain as "typical symptom magnification" is inconsistent with the ad-

ministrative record. According to Ness, shortly after taking Plaintiff on as a patient, Dr. Fassy required Plaintiff to submit to an independent psychological evaluation with clinical pain psychologist Dr. Claudia Zsigmond. Ness maintains that Dr. Zsigmond found that she exhibited "no signs of exaggeration of symptoms" and no effort to intentionally distort the testing.

Here, as Aetna correctly points out, subjective complaints of pain, although they may not be ignored in reviewing the evidence, will not, alone, demonstrate that a plaintiff is unable to perform work under the plan. *See Howard,* 929 F.Supp.2d at 1294; *Giertz–Richardson v. Hartford Life and Acc. Ins. Co.,* 536 F.Supp.2d 1280, 1292 (M.D. Fla. 2008) (administrators "not required to automatically give significant weight to all subjective complaints" because benefits would always be payable based on those complaints); *Watts v. Bell-South Telecomm., Inc.,* 218 Fed.Appx. 854, 857 (11th Cir. 2007) ("The requirement of objective evidence also promotes integrity by assuring there is corroboration for a claimant's subjective complaints, thus deterring embellished allegations of the effect of the diagnosed malady as well as deterring fraud in the claims process.") (internal quotation and citation omitted).

Dr. Fassy's notes demonstrate repeated direct observations of normal cognition and noted that Ness was not overmedicated. These findings are also consistent with treating oncologist, Dr. Audeh, who noted, on multiple occasions, that Ness' memory appeared normal for her age. Thus, the medical evidence consistently shows that both her treating physicians found her concentration normal and that she was not overmedicated. And as previously noted, subjective complaints of pain written into the medical record are insufficient to prove that her cognitive impairments prevent her return to work. As such, Aetna's decision was not wrong.

### e. SSD Award

Plaintiff contends that the ALJ's decision finding her totally disabled should also entitle her to an award of LTD benefits. According to the ALJ, Ness "has the residual functional capacity to perform sedentary work" with the opportunity to alternate between standing and sitting as needed. A–579. Following the required sequence of steps in the SSA analysis, the ALJ considered the testimony of a vocational expert, who was asked "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." A–582. Because the vocational expert answered that question in the negative, the ALJ concluded that Ness-despite her physical and mental ability to perform sedentary work on a sustained basis—was indeed "disabled" under the Social Security Act and applicable regulations. A–582. As such, Ness specifically emphasizes the determination of the "vocational" expert which noted that she is "not capable of performing any job in the national economy." *Id.*

 The ALJ's determination that Ness was able to perform sedentary work actually confirms that she is not disabled within the meaning of the LTD Policy. Furthermore, the "approval of disability benefits by the SSA is not considered dispositive on the issue of whether a claimant satisfies the requirement for disability under an ERISA-covered plan." *Oliver v. Aetna Life Ins. Co.,* 613 Fed.Appx. 892, 897 (11th Cir. 2015); *see also Vivas v. Hartford Life and Acc. Ins. Co.,* 49 F.Supp.3d 1124, 1137 (S.D. Fla. 2014) (recognizing that SSA and ERISA disability standards are "different in critical ways," and ruling that "this Court cannot find [administrator's] decision to terminate [plaintiff's] LTD benefits unreasonable based on the SSA's favorable finding of

disability under *its* requirements") (emphasis in original); *Richards v. Hartford Life and Acc. Ins. Co.*, 356 F.Supp.2d 1278, 1289 (S.D. Fla. 2004), *aff'd*, 153 Fed.Appx. 694 (11th Cir. 2005) (noting that SSA's disability determinations are generally "not persuasive in ERISA benefits cases."). This is so because the "legal principles controlling the Social Security [disability] analysis are different from those governing the ERISA analysis." *Herman v. Met. Life Ins. Co.*, 689 F.Supp.2d 1316, 1326 (M.D. Fla. 2010). Moreover, when an ERISA claim administrator has "different information" from what was available to the SSA, this commonplace circumstance is one of the "many reasons *not* to consider a decision by the social security administration" for ERISA purposes. *Fife v. Coop. Ben. Admin., Inc.*, 2014 WL 4470718, \*23 (N.D. Ala. Sept. 10, 2014); *Sobh v. Hartford Life and Acc. Ins. Co.*, No. 8:15-cv-716, 2015 WL 7444336, \*8–9 (M.D. Fla. Nov. 5, 2015), *aff'd*, 658 Fed.Appx. 459 (11th Cir. 2016) (entering summary judgment for ERISA administrator despite its "failure to give significant weight to the decision of the Social Security Administration," because ERISA administrator's determination was based on "new evidence" not submitted to SSA).

 Here, the ALJ's decision finding that Ness was disabled within the meaning of the applicable social security regulations (A–577–582) is not relevant to the disability determination under the terms of the Policy at issue. As the Eleventh Circuit observed in *Oliver*, an ALJ evaluating an SSA disability claim employs a complex sequential analysis prescribed by federal regulations. *Oliver*, 613 Fed.Appx. at 897–98. Moreover, the "procedure of using vocational experts to show that jobs were available in the national economy that plaintiff was capable of performing is the special creature of social security and has no relevance to an ERISA benefits case." *Bailey v. SBC Disab. Income Plan*, No.

05-4093, 2007 WL 1805616, \*8 (D. Kan. June 22, 2007) (citing *Conley v. Pitney Bowes*, 176 F.3d 1044, 1050 (8th Cir. 1999)). As such, the fact that the ALJ found Ness totally disabled based on the vocational expert's opinion does not automatically render her disabled with the meaning of the LTD Policy. And since the ALJ's findings actually confirmed that she was not disabled within the terms of the LTD policy, Aetna's decision was not wrong.

#### f. Transferable Skill Analysis

 And finally, Aetna contends that reliance on its TSA was appropriate and provides additional support for the decision to terminate benefits. This Court agrees. Generally, an ERISA claim administrator applying an "any occupation" type disability test is "not required to collect vocational evidence in order to prove there are available occupations for the claimant." *Richey*, 608 F.Supp.2d at 1312 (citation omitted). However, termination of LTD benefits in reliance on "TSA" that identified "occupations for which [plaintiff] was qualified and which he was able to perform" is also proper. *See Worsley v. Aetna Life Ins. Co.*, 780 F.Supp.2d 397, 402 (W.D.N.C. 2011). In sum, the Court, having reviewed the entire record before it, concludes that Aetna's decision to deny Plaintiff's long term disability benefits claim was not *de novo* wrong. Under the Eleventh Circuit six-step test, the Court need not proceed any further in reviewing Aetna's decision. However, in the interest of thoroughness, the Court will address the remaining steps in the analysis.

*2. The Court's standard of review is arbitrary and capricious because Aetna was vested with discretion to review the claims (Steps two, three and four)*

 Assuming *arguendo* that Aetna's decision was *de novo* wrong, given its

discretionary authority to decide entitlement to benefits, the Court must next determine whether there was a reasonable basis for it decision under an arbitrary and capricious standard. *See Doyle*, 542 F.3d at 1360. As long as the decision had a reasonable basis, it "must be upheld as not being arbitrary and capricious, even if there is evidence that would support a contrary conclusion." *White v. Coca-Cola Co.*, 542 F.3d 848, 856 (11th Cir. 2008). If the "evidence is close," then the administrator did not abuse its discretion, and the requisite deference compels the affirmance of the administrator's decision. *Doyle*, 542 F.3d at 1363. Here, Aetna's decision was not unreasonable, and therefore, not arbitrary or capricious. Aetna's decision was based on the record which clearly demonstrated that Ness was not disabled within the meaning of the Policy. Moreover, Aetna investigated the case thoroughly, invoked the expertise of various medical professionals and developed a complete record. As such, reasonable grounds supported its decision and it was not arbitrary or capricious.

### 3. The decision was not arbitrary and capricious despite a conflict of interest (Steps five and six)

Following *Glenn* and *Doyle*, and after considering Aetna's conflict, the Court still finds that Aetna's decision was not arbitrary or capricious. Ness contends that Aetna conducted a biased investigation for the exclusive purpose of denying her benefits and to further its own financial interest. Despite conclusory assertions to the contrary, Ness has failed to produce any evidence that Aetna's decision was affected by the fact that it insured the Policy. There is nothing in the totality of the circumstances which indicates that Aetna's conflict of interest was a major factor in its decision. As previously noted, Aetna investigated the case thoroughly and developed a complete record. Even though Ness was

totally disable under the SSA regulations, the record clearly shows that she was not disabled within the meaning of the LTD Policy. Moreover, the conflict of interest which exists in this case is typical of the insurance industry and the Eleventh Circuit has previously rejected attempts to prove that a benefits "decision was tainted by self-interest" based on standard industry practices. *See Till v. Lincoln Natl. Life Ins. Co.*, 16-14799, 2017 WL 393257, at *4 (11th Cir. Jan. 30, 2017,); *See Conkright*, 559 U.S. at 521, 130 S.Ct. at 1651 ("[T]he plan administrator's interpretation of the plan 'will not be disturbed if reasonable.' ") (quoting *Firestone*, 109 S.Ct. at 954); *White v. Coca-Cola Co.*, 542 F.3d 848, 856 (11th Cir. 2008) (" 'As long as a reasonable basis appears for [the plan administrator's] decision ..., it must be upheld as not being arbitrary or capricious, even if there is evidence that would support a contrary decision.' ") (quoting *Jett*, 890 F.2d at 1140). Thus, Aetna's decision was not was not arbitrary or capricious.

## IV. CONCLUSION

The Court, having reviewed the entire record before it, finds that Aetna's decision to deny Ness' long term disability benefits claim was not *de novo* wrong. Even if Ness could show that the benefits decision was *de novo* wrong, given Aetna's discretionary authority to decide entitlement to benefits, the Court's review is limited to the arbitrary and capricious standard. Under that standard, Aetna's decision was based on reasonable grounds and was not arbitrary and capricious. The Court will deny Plaintiff's Motion for Summary Judgment and grant Defendant's Motion for Summary Judgment.

For the reasons stated above, it is hereby **ORDERED AND ADJUDGED:**

1. Defendant's Motion for Summary Judgment (Doc. 32) is **GRANTED.**

2. Plaintiff's Motion for Cross Summary Judgment (Doc. 38) is **DENIED.**

3. The Clerk is directed to enter judgment in favor of Defendant Aetna Life Insurance Company and against Plaintiff Melinda Ness.

4. All pending motions are denied as moot.

5. The Clerk is directed to close this case.

**DONE AND ORDERED** in Tampa, Florida on June 15, 2017.